MARY SILVIA *vs.* GAETANO CAIZZI.

JULY 17, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action of trespass on the case for negligence, under general laws 1923, chapter 333, sec. 14, to recover damages for the death of one Manuel Silvia, alleged to have been caused by the wrongful act of the defendant. The plaintiff alleges that she is the daughter and sole next of kin of said Manuel Silvia, deceased, and that no

executor or administrator has been appointed to administer his estate.

The case was tried before a justice of the superior court, sitting with a jury, and resulted in a verdict for the plaintiff in the sum of $900. The defendant filed a motion for a new trial which was denied by the trial justice. The case is now before us on defendant's exceptions to certain rulings during the trial; to the denial of defendant's motion for a directed verdict; and to the refusal of the trial justice to grant a new trial.

The accident in question occurred on Metacom avenue in Bristol, Rhode Island, shortly after midnight of March 20, 1937. Metacom avenue runs generally north and south, in the towns of Warren to the north and Bristol to the south. It appears in evidence that the traveled portion of Metacom avenue is twenty-eight feet wide, with a white line in the center of the highway separating the lanes for traffic going in opposite directions. There are no sidewalks at or in the vicinity of the place where the accident happened.

The deceased, when in Bristol, lived at his mother's house, which is on the westerly side of Metacom avenue, some distance in from that highway. There is a curbing and gutter for an undetermined distance in front of these premises. Metacom avenue is straight and practically level in this vicinity.

As one travels south on Metacom avenue, that is, in going from Warren to Bristol, there is a street electric light about 400 feet north of the driveway to the Silvia place, and another such light about 125 feet south of that driveway. The Silvia mailbox is located on the westerly side of Metacom avenue, some twenty feet north of the entrance just mentioned.

On the Saturday night in question, the deceased and Anibel C. Cabral, who resided in Warren and with whom the

deceased had been living for a few days, drove in Cabral's automobile to a barroom in Bristol. With the exception of two periods of about one half to three-quarters of an hour each, the deceased was in the barroom with his friend Cabral from the time they reached there, around 8:30 p. m., until the barroom closed at midnight. The first time that the deceased left the barroom he went to a nearby barber shop for a haircut and shave; the second time, he ostensibly went on an errand. The testimony is uncontradicted that, during the entire time that the deceased and Cabral were in the barroom, each one had five glasses of beer. Apparently the deceased had no money, for the barkeeper paid for the haircut and shave, and Cabral paid for the beer.

While returning to Warren by way of Metacom avenue, the deceased asked Cabral to let him off at his mother's house as he intended to stay there that night. Cabral, complying with this request, brought his automobile to a stop on the westerly side of Metacom avenue, directly in front of the driveway to the Silvia place. As he left, the deceased was walking in that driveway toward the house.

Between 12:30 and 1 o'clock that morning the deceased, severely injured, was found on Metacom avenue by Anthony P. Sousa, who was driving his automobile from Warren to Bristol. Another unidentified motorist, who happened to come upon the scene, took the deceased to a doctor while Sousa went to report the matter to the police, telling them where he found "the deceased and handing over to them a front bumper with the piece of broken shackle attached thereto which he picked up at the scene of the accident." The deceased, who was forty-seven years old, died in a hospital three days later. According to the life tables his expectancy of life was twenty-three years.

Upon being notified of the accident, the police immediately started to search for an automobile without a front

bumper. They finally found such an automobile, parked with its front against a rear fence, in the defendant's yard. He was then awakened and directed to drive the automobile to the police station, where the front of the automobile was more closely examined. In addition to certain other damage to which we will presently refer, this examination revealed part of a broken shackle where the front bumper of an automobile is ordinarily attached. The bumper with part of a shackle, which Sousa found at the scene of the accident, was then produced and placed on the front of the automobile in the defendant's presence. The bumper fitted that car, and the two parts of the broken shackle, one on the automobile and the other on the bumper, meshed with each other so as to form a complete shackle.

The other damage to the front of the automobile was as follows. The glass in the *right* headlight was broken, and the bar connecting the two headlights was bent. Pieces of glass, showing parts of letters painted thereon, were held in place by the rim of the right headlight. This is important in view of later developments.

The evidence further shows that the police went to the scene of the accident shortly after daybreak that same morning. Seventy-five feet south of the driveway to the Silvia place and between two and three feet easterly from the westerly curb of Metacom avenue, they picked up some glass with the top of the letters "P" and "Y" painted on it. Other pieces of glass, which they also recovered, were strewn along and close to the westerly edge of that highway from the point just indicated to the driveway in question. All this glass fitted the fragments of glass which were still on the right headlight of the defendant's automobile, and the lettering on the pieces of glass that were picked up on the highway, when put in place, completed the letters which apparently were on that headlight before its glass was broken.

Anthony P. Sousa testified that, when he found the deceased, his body was in a diagonal position on the westerly part of Metacom avenue, some distance south of the Silvia driveway, with his head in a northeasterly direction and not far from the white line in the center of that highway. At that time he also observed two blood spots, one larger than the other, the former about two feet from the gutter on the westerly side of Metacom avenue, and the latter where the head of the deceased was on the highway.

A heavy rain had fallen between the time that the deceased was found by Sousa and when officer Frederick W. Serbst of the Bristol police went to the scene that morning. According to his testimony, Serbst found no blood spot near the center of the highway, but he did find one such spot "about a foot in diameter" some three feet easterly from the westerly curb of Metacom avenue, which, as already stated, is twenty-eight feet wide. This blood spot was seventy-three feet south of the Silvia driveway, or, about two feet north of and in line with the place where the glass with parts of letters painted thereon was picked up.

The medical testimony shows that the deceased had fractures of the second to the eighth ribs, both inclusive, on the right side, and that both bones of his lower right leg were fractured. He also suffered severe head and internal injuries, which we consider unnecessary to specify.

When the police completed their investigation, the defendant was questioned by Anthony J. Ferrara, chief of the Bristol police. At the first interview he denied all knowledge of any accident or of the damage to the front of his automobile. Some time later, he made a statement, which was reduced to writing and signed by him, giving his recollection of what occurred as he drove his automobile southerly by the Silvia place while returning from Warren to his home in Bristol.

In his statement, which is in evidence, the defendant says that he left Warren shortly after midnight and drove on the westerly part of Metacom avenue at a speed of about 20 to 25 miles an hour. "When I reached a driveway west of Metacom avenue, going by this driveway, I feel a bump, little bump, didn't feel much. It was rain hard, and wind blow, I hear noise of bumper, I think it can in road. I go right ahead . . . and go home. I drive my car in my yard, and park car near the fence. I go upstairs and go bed. I think I get home about half past twelve. I didn't think I hit any man and I didn't see any man in the road. . . . I didn't tell how it happened at seven-thirty this morning because I afraid and nervous." His testimony at the trial was to the same effect. He admitted pleading guilty and paying a fine of $100 on a charge of leaving the scene of an accident.

Mary R. Silvia, a sister-in-law of the deceased, who with her family formed part of the Silvia household, testified, without objection, that the deceased was in the habit of getting the mail from the Silvia mailbox irrespective of the time that he came home. She further testified that at the time of the accident he was expecting mail calling him back to work.

The defendant contends that his motion for a directed verdict should have been granted by the trial justice. He argues that there was no evidence to show that the deceased was in the exercise of due care. We cannot agree with this contention. It is firmly established with us that the burden of proving the exercise of due care rests on the plaintiff. In the absence of direct evidence, however, due care may be proved by circumstantial evidence, and a verdict can be supported by a fair preponderance of such evidence.

Ordinarily, the question of want of due care, or contributory negligence, is, in the first instance, one of fact

for the jury. It is the generally accepted rule that a verdict should not be directed for the defendant, unless the only proper inference from the facts is that, in the circumstances of the case before the court, the injured person did not act as an ordinarily prudent man would have acted. *Donahue* v. *News-Tribune Co.*, 61 R. I. 96, 200 A. 454.

In the instant case the deceased could not speak for himself and there was no witness to the accident. Under such circumstances, there is a presumption that the deceased was in the exercise of due care when he was injured. *Judge* v. *Narragansett Elec. Lighting Co.*, 21 R. I. 128. But a presumption of due care is not evidence. It is merely a rule of law, based on the instinct of self-preservation, to which recourse is had when there is a failure of evidence. Therefore, such a presumption can continue only while there is no credible evidence of the fact. It ceases to be of force against competent evidence showing want of due care.

The plaintiff in the present case was entitled, in the first instance, to the presumption that the deceased was in the exercise of due care at the time of the accident. If the evidence showed or reasonably tended to show that as a matter of fact he was not in the exercise of due care, then the presumption would be of no assistance to the plaintiff. When rebutted by competent and credible evidence, the presumption would disappear and the fact, as established by such evidence, would control.

On the defendant's motion for a directed verdict, the plaintiff, under our well-established rule, was entitled to have the evidence, and every reasonable inference which could be drawn therefrom, construed most favorably to her. The evidence before us is fairly open to different interpretations, one favorable and the other unfavorable to the plaintiff. In this situation, the defendant's motion for a directed verdict was properly denied. His exception to that ruling is overruled.

The unusual circumstances in evidence, when considered as a whole and interpreted as the jury apparently did in this case, were sufficient from their point of view to support a verdict for the plaintiff on the question of liability, even though another jury, with equal propriety, might have returned a verdict for the defendant. The purely circumstantial nature of the evidence respecting the due care of the deceased and the defendant's negligence presented questions of fact as to which two equally honest juries reasonably could reach contrary conclusions. In view of such possibilities, the trial justice properly refrained from disturbing the jury's verdict as to liability.

But the defendant's motion for a new trial also included the ground that the damages awarded by the jury were excessive, because there was no competent evidence to support the jury's verdict on this point. In almost every case, and especially in a case of this kind, the question of damages is important. It is, therefore, the duty of the trial justice to examine the evidence and the weight thereof on such issue with as much care as is ordinarily given to the question of liability. In this case, the trial justice sustained the jury's award merely because "the jury heard certain testimony as to what he (the deceased) did with his money", although in the course of his decision on this point he expressed serious doubt whether, according to the evidence, the deceased would have left any estate at all had he lived out his natural life. Such a perfunctory ruling disregards our well-settled rules appertaining to the duty of the trial justice in deciding a motion for a new trial, thus depriving both the parties and this court of the benefit of his independent and considered judgment on an important issue in the case.

The testimony on the question of damages comes almost entirely from Mary R. Silvia, the sister-in-law of the deceased. She testified that she had known the deceased for about eight years; that he was always in good health; that

he was willing to work when he could find work, and that, while he drank to some extent, she never saw him under the influence of liquor.

It appears from her testimony that the deceased successively worked as a laborer or farm hand for the National India Rubber Company; the Mt. Hope Finishing Company in Taunton, Massachusetts; the town of Bristol, and the Works Progress Administration. This part of her testimony, with the exception of the period that he worked for the W. P. A., is vague and indefinite. There is nothing therein to show, even approximately, the length of time that he worked at any of the other places named, or what wages he received, or what it cost him to live. She did testify that, during the time that the deceased worked for the W. P. A., he gave his mother, who owned the property herein referred to as the Silvia place, between $16 and $20 every two weeks. This money was given by him "to help pay the tax and the notes on the house, and the rest was to go towards the support of his mother."

James H. Given, pay roll supervisor for the W. P. A., testified that the deceased began working for that organization November 4, 1935 and was discharged December 24, 1936. The figures in evidence show that his average weekly pay was $9.74. At the time of the accident he had been working a few days for Cabral without compensation, other than his keep. He had no money in the bank, and apparently no money was found on his person at the hospital.

The purpose of our statute for death by wrongful act and the rule of damages that applies in an action under that statute are clearly stated in *McCabe* v. *Narragansett Elec. Lighting Co.*, 26 R. I. 427. Such rule has since been consistently followed by this court. *Reynolds* v. *Narragansett Elec. Lighting Co.*, 26 R. I. 457; *Dimitri* v. *Cienci & Son*, 41 R. I. 393; *Burns* v. *Brightman*, 44 R. I. 316; *Walsh* v. *Bressette*, 51 R. I. 354.

In the instant case the evidence on the question of damages is insufficient to satisfy the requirements of the rule in the above cases. There is but slight testimony as to decedent's earning capacity and no testimony as to his personal expenses. No reason appears in the testimony for such deficiency of evidence.

Our examination of the evidence on the question of damages convinces us that the trial justice committed prejudicial error in denying the defendant's motion for a new trial. The defendant's exception to that ruling is therefore sustained.

All other exceptions of the defendant have been considered and found to be without merit. They are overruled.

For the reasons stated, the case is remitted to the superior court for a new trial on all issues.

*Hogan & Hogan, John N. Cole,* for plaintiff.

*Arthur Falcone,* for defendant.