268 A.2d 277.

CARMINE CARRATURO, *Adm'r* vs. JOSEPH LAWRENCE.

JULY 29, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J.   The plaintiff, as administrator of the estate of his deceased son Thomas, brought this action in 1964 under G. L. 1956, chap. 7 of title 10, as amended, by P. L. 1958, chap. 151, §1, to recover damages for his son's death, which he alleged was caused by the wrongful act of the

defendant. The case was heard in 1969 before a justice of the Superior Court sitting with a jury and resulted in a verdict for the defendant. The plaintiff filed a motion for a new trial which was denied by the trial justice. The plaintiff then filed this appeal.

The accident resulting in decedent's death occurred in Bristol, Rhode Island, on July 13, 1963, on a plat of land then being developed by its owner, Manuel Carreiro. Mr. Carreiro had engaged a construction company to excavate a cellar on one of the lots, and defendant, an employee of the construction company, was operating a bulldozer on the premises. On the day in question Mr. Carreiro had taken his sons Robert, then eight years old, and Ronald, then six years old, together with the decedent, who was then seven years old, to the excavation site. During the time the children were there, Ronald and decedent were playing around the excavation and were chased away by both Mr. Carreiro and defendant.

It appears from the evidence that the two boys were on the premises at various times during the morning, afternoon and after supper. Although defendant could not specifically identify decedent, because he had never met him and did not know him, he did know Ronald Carreiro, and plaintiff's own evidence was to the effect that it was decedent who was with Ronald that day. The defendant testified that the last time he saw the two boys was around 6 p.m. when they came to the premises with Mr. Carreiro; that he told them to go away; that they went away; that as he went up a little mound with the machine and looked over the top, he saw them heading toward an apple orchard some distance away; that this was the last he saw of them; and that he never saw either one come back.

He further testified that he worked for another hour and a half, finishing at 7:30 p.m. It appears from the evidence that it was daylight all the while defendant was working.

He testified that he was operating the bulldozer at approximately two miles per hour and he never saw decedent in front of him.

In describing his work, defendant testified that there was a point in the operation, as he was digging out that day, when he had a blind spot in front of him; that this was when he got to the very top of the hill being formed as he excavated; that this was the only time the blade went above his eye level; that it was impossible to strike anything in front of him because he had a good view of the place he was approaching; and that the only time anything could get buried would be on a climb where the dirt was being discarded. In substance, he testified that as he climbed the mound which was forming as he dug the cellar and moved the dirt, he could not see what was on the other side of the mound. The defendant was not aware of the accident until notified by the police at his home that evening.

It appears that when Mr. Carreiro was ready to leave the premises, he could not find his son Robert and the decedent; that he inquired of his son Ronald, but received no satisfactory reply; that then he and decedent's father started to search for the boy all over the premises; that they then returned to the site of the excavation where Mr. Carreiro again asked his son Ronald to tell him where decedent was; that Ronald pointed to the mound of dirt which defendant had dug up from the cellar; and that they went to the mound and found decedent buried in the dirt with his head sticking out. The boy was dead.

In his charge to the jury the trial justice instructed that the question of defendant's negligence was a question of fact for them to decide. With regard to the question of the decedent's conduct he charged that

"* * * the decedent must exercise that degree of care which a child of his tender age and intelligence would exercise under the same or similar circumstances, and

negligence of the decedent is not presumed, on the contrary, there is a presumption that the decedent was in the exercise of due care at the time of his demise."[1]

He also included the following instructions in his charge:

"If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following facts or elements. One, the witness was under the control of that party and could have been produced by the exercise of reasonable diligence. Two, the witness was not equally available to an adverse party. Three, a reasonable prudent person, under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him, and four, no reasonable excuse for the failure has been shown."

The plaintiff did not object to the foregoing instructions, and, therefore, those instructions became the law of the case and were binding on the jury, *Harju* v. *Shelby Mutual Casualty Co.*, 91 R. I. 294, 299, 162 A.2d 532, 535, as well as upon the trial justice in passing on a motion for a new trial, *Lee* v. *Kindelan*, 80 R. I. 212, 219-220, 95 A.2d 51, 54.

In passing on plaintiff's motion for a new trial, the trial justice, after reviewing the pertinent evidence, approved the verdict. In doing so, he took into consideration the fact that (1) defendant was operating the bulldozer with no assistance from anyone else and (2) that at a certain point in his operation of the machine he could not see in front of him. He stated in substance that there was no evidence that, at or about the time of the incident, or shortly before, defendant was aware of any children in the immediate area, and that in the absence of such evidence he could not fault the verdict of the jury. He did note, how-

---

[1]See *Silvia* v. *Caizzi*, 63 R. I. 172, 179. 7 A.2d 704, 707.

ever, that there was evidence from which it could reasonably be inferred that the other child was probably there at or about the time of the incident, and that for some reason this witness was not called by the plaintiff. He stated that the failure to call the other child as a witness "apparently * * * did not help the Plaintiff's cause," and he also expressed his feelings in the following language:

> "The weakness of the Plaintiff's case is the failure to call the other child who apparently was present at the time of the incident. His testimony, as far as this Court was concerned, would have swayed the jury one way or the other. Either made a stronger case for the Defendant or made a better case for the Plaintiff."

The only question before us is whether the trial justice erred in denying plaintiff's motion for a new trial. In arguing his motion, which is based on the usual grounds, plaintiff recognizes that, in order for him to prevail here, he must prove that in considering the motion the trial justice failed to perform his duty in accordance with the guidelines set forth in our cases, or that in performing such duty he either overlooked or misconceived material evidence or was otherwise clearly wrong. *Rabau* v. *Gaudreau*, 107 R. I. 146, 265 A.2d 739.

The trial justice rendered his decision denying plaintiff's motion in a bench decision. We have already referred to it, and there is no need to repeat what he said, except to point out that, after reviewing the pertinent evidence, he approved the jury's verdict. We are satisfied that in passing on the motion he performed the duty required of him and that in approving the verdict he exercised his independent judgment.

The only question remaining is whether in so doing he misconceived or overlooked any material evidence. In arguing that the trial justice misconceived material evidence, plaintiff refers to a statement in the decision where the trial justice said:

> "The only evidence in the record is that there are two children present to the knowledge of the Defendant several hours before the incident in question, and that he chased the boys away and he didn't see them thereafter."

In attempting to support his argument, plaintiff points to defendant's testimony indicating that the last time he saw the boys was less than "several hours before the incident in question." The plaintiff refers specifically to portions of defendant's testimony wherein he said that the last time he saw the boys was "around 6 o'clock" and that he started to cut the ramp "some 45 minutes to an hour" after he last saw decedent heading toward the orchard.

After carefully reading the decision of the trial justice in its entirety, we are satisfied that he did not misconceive the evidence in arriving at his ultimate decision. As we have previously stated in discussing his decision, he found in substance that there was no evidence that, at or about the time of the incident, or shortly before, defendant was aware of any children in the immediate area. He based his decision, in part, on that finding, which, in our judgment, is supported by competent evidence. On this record we must conclude that plaintiff has failed to sustain his burden of proving that the trial justice misconceived or overlooked any material evidence or that the findings on which he based his ultimate decision were clearly wrong.

Although plaintiff filed no motion for a directed verdict, he now argues that on the facts of this case defendant was guilty of negligence as a matter of law. This issue is not properly before us and requires no extended discussion. The trial justice left the question of defendant's negligence and plaintiff's contributory negligence to the jury under instructions which were not objected to by plaintiff. They became the law of the case, which the jury was duty-bound to follow.

The plaintiff's final contention challenges the trial justice's instructions on the "empty chair" doctrine. See *Gunn* v. *Hertz Corp.*, 106 R. I. 509, 261 A.2d 646. We have already referred to this portion of the charge and noted that, in the absence of any objection thereto by the plaintiff, those instructions became the law of the case and cannot be challenged by the plaintiff here. We only point out that from the evidence, it was reasonable to infer that Ronald was with the decedent at the time of the accident, that he was under the control of the plaintiff at the time of trial and could have been produced by the exercise of reasonable diligence, and that he was not equally available to the defendant.[2] Thus, there is no merit to plaintiff's argument that the trial justice could draw no inference "from the absence of any witness if there were such a witness."

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Anthony R. Berretto,* for plaintiff.

*Gunning & LaFazia, Bruce M. Selya, Raymond A. LaFazia,* for defendant.

[2] There is competent evidence that Ronald was with the decedent shortly before the incident, that he was 11 or 12 years old at the time of the trial, that he was a relative of plaintiff and the decedent, that he pointed out the place where decedent's body was found, and that, at the time of the trial, Ronald was living in Bristol.