277 A.2d 754.

WILLIAM J. ROBERTS *et al. vs.* ARDATH R. WILLS *et al.*

JUNE 4, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This civil action brought to recover damages resulting from a motor vehicle collision was tried to a jury in the Superior Court, a verdict being returned for the defendants. Judgment entered on the verdict, and thereafter an order was entered granting the plaintiffs' motion for a new trial. The defendants are now prosecuting in this court an appeal from that order, while the plaintiffs are prosecuting a cross appeal from the court's denial of a request to charge the jury.

It appears from the record that just prior to the collision. plaintiff, Roberts, was operating a taxicab owned by plaintiff, Anthony F. Fiore, in a northerly direction along Canal Street in the town of Westerly and that in the course of making a left turn in a westerly direction to enter the Stillmanville Bridge his taxi was struck by a motor vehicle operated by defendant, Ronald J. Wills. It appears that at the precise moment of the collision the vehicle operated by Roberts was in the process of making the left turn and

that it had crossed over the center line of Canal Street and was moving in a westerly direction.

Roberts testified that on the evening of January 25, 1966, shortly after six o'clock he was proceeding north on Canal Street toward the Stillmanville Bridge. He testified that as he approached the bridgehead going north, he could see a car coming from the opposite direction that was about 300 feet away. He testified that he turned on his directional signal light and proceeded to start to make the left turn to go over the bridge. His testimony as to the location of his car when it was struck by defendant's car is somewhat confused. He stated that his car was moving west toward the bridge and had reached the ramp when defendant's car coming down Canal Street hit the right side of his car. While it is difficult to determine from Roberts' testimony just where his car was with relation to the southbound lane of Canal Street when it was struck by defendant's car, the trial justice on the basis of the location of the debris and other physical evidence found that Roberts' car had reached the ramp.

However, Samuel Cillino, a member of the Westerly Police Department for some seven years, investigated the accident and testified that at the scene he spoke to plaintiff, Roberts, and, referring to his report on the accident, testified that Mr. Roberts had told him at the scene that he was "* * * heading north on Canal Street when he put his left directional light on to make a left turn onto the Stillmanville Bridge. Mr. Roberts said he didn't see anything coming from the opposite direction at this time. Mr. Roberts said that he was in the process of making the left turn onto the Stillmanville Bridge when all of a sudden he was hit from the right side by another vehicle." According to the police officer, Mr. Roberts made this statement to him immediately after he had asked Roberts whether he felt that he needed medical attention.

Ronald J. Wills testified that at the time of the collision he was on his way to work, proceeding in a southerly direction along Canal Street, and that the pavement was fairly dry but there were patches of snow here and there. According to his version of the accident, he was approximately 300 feet north of the entrance to the Stillmanville Bridge when he saw another automobile coming along Canal Street in a northerly direction. This vehicle, he testified, came to a standstill, put on its left blinker light, and continued to stand headed in a northerly direction on Canal Street. Wills testified that he continued to proceed in a southerly direction along Canal Street watching the other car, which continued to remain standing for "a couple of minutes." During this period, as he continued to operate in a southerly direction toward the bridgehead, the standing car suddenly started to move, turning left to enter the Stillmanville Bridge, and at this time the Wills car was approximately 75 feet north of the turning vehicle.

Wills further testified that the vehicle appeared to him to be going between 5 and 10 miles an hour and that he continued to watch it with caution and jammed on the brakes of his vehicle. When he saw that he could not stop in time, he swerved to the left, hoping to avoid the collision. Eventually, however, he testified, these cars came together, with the Roberts car "blocking my lane," that is, the southbound lane of Canal Street. Wills also testified that at the time he applied his brakes, he was proceeding at approximately 30 miles an hour, but at the time he came into contact with the other car he was going faster, perhaps 45 miles an hour, because his car picked up speed as it slid along a patch of snow.

It would serve no useful purpose to again state the obligation of a trial justice when confronted with a motion for a new trial on the ground that the verdict is contrary to the weight of the evidence. We have set out the ex-

tent of that obligation repeatedly, and it is clear from the transcript of his decision that the trial justice here did, in an exercise of his independent judgment, pass upon the weight of the evidence adduced at trial and the credibility of the witnesses who testified thereat.

The defendants argue vigorously in this case that the trial justice violated the well-settled rule that a trial justice should not substitute his judgment for that of the jury on such a motion where the evidence is so nearly in balance that reasonable minds could reach different conclusions thereon or draw contrary conclusions therefrom and this though he might be inclined personally to find contrary to the verdict of the jury. *Cinq-Mars* v. *Standard Cab Co.*, 103 R. I. 103, 235 A.2d 81. It is true, as defendants contend, that a trial justice may not substitute his judgment for that of the jury by drawing an inference from an evidentiary situation that is contrary to an inference drawn by the jury from that same evidence absent a showing that the inference drawn by the jury is unreasonable or that it is less probable than the one that the trial justice would draw therefrom. *Petitpas* v. *Merchants Mutual Ins. Co.*, 103 R. I. 479, 238 A.2d 750.

However, this rule has application to those cases in which the trial justice is clearly considering the same evidentiary situation as was considered by the jury. It has no application where the court, in an exercise of its power to accept or reject evidence in considering a motion for new trial as stated in *Barbato* v. *Epstein*, 97 R. I. 191, 196 A.2d 836, has either rejected evidence accepted by the jury or accepted evidence that had clearly been rejected by the jury. In *Barbato* we said that a trial justice, in discharging his duty on a motion for a new trial, "* * * can accept some or all of the evidence as having probative force; or he can reject some of the testimony because it is impeached or contradicted by other positive testimony

or by circumstantial evidence, or because of inherent improbabilities or contradictions which alone or in connection with other circumstances satisfies him of its falsity * * *." *Id.* at 193, 196 A.2d at 837.

In the first place, the trial justice notes that the jury during its deliberation asked that the statement given by Roberts to Patrolman Cillino be read to it, and he comments that apparently the jury gave considerable weight and credence to that statement. From the context in which he discloses this in his decision, it is clear that he was rejecting the contents of plaintiff's statement to Patrolman Cillino not on the ground of want of credibility on the patrolman's part, but because the physical facts were inconsistent therewith. In support of this position he discussed extensively the location of the debris and wreckage from the cars with reference to the point of impact. He considered also from the position of the cars after the collision that plaintiff Roberts' car "* * * was well over the center line of that highway when struck." He comments further that the testimony of defendant that he had seen plaintiff Roberts' taxi standing with its directional light blinking when he was about 300 feet away and that it turned in front of him suddenly when he was about 75 feet away was inconsistent with the physical facts concerning the time at which and conditions under which he operated the braking system of his car.

It is our opinion that the trial justice very effectively followed the rule laid down in *Barbato* and exercised his power to reject and accept testimony and draw inferences therefrom and that, in so doing, he drew inferences which supported the conclusion that defendant's testimony as to the operation of his vehicle was inconsistent with the physical facts described in the evidence and that, therefore, a verdict for defendants failed to do substantial justice between the parties. In such a situation it became

the duty of defendants on this motion to establish that the trial justice was clearly wrong in reaching this decision by reason of having overlooked or misconceived some relevant or material evidence on a controlling issue. *Merola* v. *Rotella,* 106 R. I. 735, 263 A.2d 108. In our opinion, defendants have failed to meet the burden thus imposed upon them, and we are unable, therefore, to say that the trial justice was clearly wrong in ordering a new trial in this case.

Because we reach this conclusion, it is our opinion that it is unnecessary for us to consider the cross appeal of the plaintiffs from an alleged failure on the part of the trial justice to instruct the jury on the doctrine of last clear chance in accordance with the plaintiffs' request therefor.

The defendants' appeal is denied and dismissed, the appeal of the plaintiffs is denied pro forma, and the case is remitted to the Superior Court for a new trial.

*Crandall, Longolucco, Parrilla & Lenihan, Joseph J. Parrilla,* for plaintiffs.

*Francis V. Reynolds, Paul V. Reynolds,* for defendants.