GIBBS OIL CO.

v.

George L. POTTER.

81–252–Appeal.

Supreme Court of Rhode Island.

Jan. 31, 1984.

Anthony G. Iannuccillo, Selya & Iannuccillo, Providence, for plaintiff.

Robert S. Bruzzi, Tobin & Silverstein, Inc., Louis A. Geremia, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal from a decision of a trial justice of the Superior Court granting the motion of the plaintiff, Gibbs Oil Co. (Gibbs), for a new trial, following a jury verdict in favor of the defendant, George L. Potter (Potter). The jury found that Potter had not executed the personal guaranty of the indebtedness of Potter's Gasoline and Distributors, Inc., as Gibbs alleged. Subsequently, the trial justice granted the plaintiff's motion for a new trial on the ground that

> "[t]his verdict does not do justice between the parties, is contrary to the credible evidence in the case, and, therefore, I am satisfied that the only way to do justice * * * is to grant plaintiff's motion for a new trial."

Potter contends that the trial justice failed to carry out his proper duty in passing upon the motion as enunciated in *Barbato v. Epstein,* 97 R.I. 191, 196 A.2d 836 (1964). Specifically, Potter's position is that the trial justice's decision was based upon misconceptions of material evidence and misapplications of the legal standards to be used in deciding a motion for new trial. We disagree and affirm the trial justice's order.

The pertinent facts are as follows. Potter wholly owned Potter's Gasoline & Distributors, Inc., a corporation engaged in the retail gasoline business since 1965. Gibbs, a gasoline wholesaler, had been supplying the corporation with gasoline throughout 1973. Apparently, a significant volume of gasoline had been supplied to the corporation on credit. By March 1973, the amount of credit running from Gibbs to Potter's corporation was in excess of $120,000. Gibbs desired additional security from Potter to secure this line of credit.

The testimony shows that on or about March 30, 1973, Alfred Staples (Staples), Gibbs's wholesale manager, took three documents to Potter's attorney's office for Potter to sign. There Potter signed a personal promissory note secured by a mortgage, a surcharge agreement, and a waiver-of-interest agreement. Potter and his attorney, Charles Butterfield (Butterfield), both testified at trial that up to this time Gibbs had not requested Potter to execute a personal guaranty.

On or about the next morning, March 31, 1973, Staples visited Potter in his corporate office in Providence. Staples brought with him a personal guaranty for Potter to sign. Potter signed the guaranty in his capacity as president of Potter's Gasoline and Distributors, Inc. Staples returned to Gibbs's Boston office with the signed document. Gibbs's attorney informed Staples that the guaranty, as executed, would not bind Potter individually; Potter would have to sign another guaranty in his individual capacity. Staples testified that a second guaranty was then made out. This second guaranty was exactly identical to the first, even bearing the same date, March 31, 1973. This point is where the evidence diverges.

Staples testified that he returned to Potter's office on or about April 2 or 3, 1973, to have Potter sign the second personal guaranty. Gibbs contends that Potter did sign the document while Potter contends that Staples did not even return to request its execution. However, Potter's alleged signature does appear on the document. Thus, expert testimony was offered by both parties on the authenticity of the signature.

The plaintiff's expert, Ordway Hilton (Hilton), conducted extensive comparisons with admitted signatures executed at about the same time and concluded that the signature on the second personal guaranty was, in fact, Potter's. The defendant's expert, Pauline Patchis (Patchis), while admitting that the disputed signature was "very, very close" and "to the point of being written by the same individual," reached the opposite conclusion. Patchis found the signature to be "the work of a very highly skilled individual."

The trial justice instructed the jurors that they were to pass on the credibility and weight to be afforded to the expert and nonexpert testimony presented in determining if Potter had executed the second personal guaranty. Neither party objected to any part of the jury instructions. The jury returned a verdict for defendant. Approximately three weeks later, the trial justice granted plaintiff's motion for a new trial.

On appeal, a trial justice's ruling on a motion for a new trial will be afforded great weight and will not be disturbed unless he or she has "overlooked or misconceived material evidence, or is otherwise clearly wrong." *Labrecque v. Branton Yachts Corp.*, R.I., 457 A.2d 617, 621 (1983); *Barbato v. Epstein*, 97 R.I. at 193, 196 A.2d at 837. The appellant contends that the trial justice misconceived three separate portions of Patchis's testimony. We disagree. Further, we find that the trial justice has referenced the facts with the required degree of specificity to enable us to determine that his decision was not based upon a misconception or oversight. *Zarrella v. Robinson*, R.I., 460 A.2d 415, 418 (1983).

The defendant contends that the trial justice overlooked or misconceived evidence on a controlling issue, that is, the meaning of Patchis's testimony. *See Bennett v. Bennett*, R.I., 433 A.2d 968, 971 (1981) (citing *Gordon v. Campanella Corp.*, 112 R.I. 417, 421, 311 A.2d 844, 847 (1973)). However, the trial justice did not state that Patchis compared the signature on the second personal guaranty with only one other signature as defendant contends. Indeed, the trial justice reviewed Patchis's whole methodology. He did note, however, that she chose to "focus" on a single other signature. This conclusion is supported by the record. Thus, the trial justice did not misconceive Patchis's testimony.

The defendant further urges that the trial justice misconstrued Patchis's statements about the effect of time on her conclusion. Patchis's testimony indicates that she was under the impression that Gibbs was alleging that Potter signed the second guaranty on March 31, 1973. The trial justice notes that Patchis "pointed out that if they [the signatures on the two personal guaranties] weren't executed the same day, then that might change her opinion." Gibbs alleged the two guaranties were signed on different days, despite the fact that both recited the same date of execution, March

31, 1973. Thus, Patchis was laboring under a false assumption. The trial justice did not misconceive material testimony here.

Third, defendant contends that the trial justice misinterpreted Patchis's testimony on the proposed method of forgery. Patchis testified that although she could not state definitely that the signature on the second guaranty was not mechanically reproduced, she believed that it had not been done in this manner. It does not behoove defendant now to second-guess his own expert. Patchis was clearly of the opinion that the signature was not mechanically reproduced and the trial justice did not misconstrue her testimony in so finding.

In summary, the trial justice fulfilled his duty "to consider in the exercise of his independent judgment all of the material evidence in the case in the light of his charge to the jury and to pass on its weight and the credibility of the witnesses." *Barbato v. Epstein,* 97 R.I. at 193, 196 A.2d at 837. We find no error in the trial justice's decision that Patchis's testimony was incredible because of its "inherent improbabilities or contradictions which * * * satisfie[d] him of its falsity * * *." *Id.; See Notarantonio v. Damiano Bros. Welding Co.,* 101 R.I. 173, 176, 221 A.2d 473, 475 (1966).

A trial justice's duty on a motion for a new trial is twofold. First, as discussed above, he must sit as the "seventh" or "super" juror, reviewing and passing on the material evidence. *Kelly v. C.H. Sprague & Sons Co.,* R.I., 455 A.2d 1302, 1304 (1983); *Bennett v. Bennett,* 433 A.2d at 970.

"Once the trial justice has scrutinized the evidence in the fashion described here, he must make one of two choices. In those instances where his judgment tells him that the particular evidence and the reasonable inferences to be drawn therefrom are so nearly balanced that reasonable men could arrive at different results in the consideration of the case, he is obliged to deny the motion and affirm the verdict. However, if his judgment tells him that the jury's verdict is against the fair preponderance of the evidence and thereby fails either to do justice to the parties or to respond to the merits of the controversy, the motion must be granted and the verdict set aside." *Bennett v. Bennett,* 433 A.2d at 970–71 (quoting *Gordon v. Campanella Corp.,* 112 R.I. at 420–421, 311 A.2d at 847).

The defendant contends that the reasonable inferences that can be drawn from the instant facts make either his or plaintiff's version equally plausible. The trial justice disagreed, and so do we.

■ A trial justice is free to reject testimony that is impeached, abrogated by other positive testimony, inherently improbable, or contradicted when viewed in connection with other circumstances, if he or she is satisfied of its falsity. If so, he or she must then apply the second part of the test to determine if a new-trial-motion should be granted. *Roberts v. Wills,* 108 R.I. 586, 588, 277 A.2d 754, 757 (1971); *Barbato v. Epstein,* 97 R.I. at 193, 196 A.2d at 837. In the present case, the trial justice disregarded Patchis's testimony because it was not supported by her own analysis and because of the inherent improbability that "Mr. Staples would have scoured the countryside" to find a professional forger. The trial justice disregarded Potter's testimony because it was contradicted when viewed in connection with other circumstances in the case. The trial justice found that "either he [Potter] signed that personal guaranty or he had no more gasoline for his service stations." The trial justice was free to add this piece of evidence by drawing proper inferences from the existing record. *Id.* We do not find that this inference in any way constitutes an abuse of discretion.

When the trial justice applied the second part of the new-trial-motion test, he had before him the testimony of Butterfield, Staples, and Hilton. On the basis of this evidence, the jury's verdict was against the fair preponderance of the evidence and, as the trial justice correctly found, failed to do justice. *Bennett v. Bennett,* 433 A.2d at 970.

The defendant next contends that the trial justice erred by reassessing credibility and issues of fact after explicitly entrusting these functions to the jury. We recognize that credibility and factfinding, like the determinations of liability and damages, are "clearly * * * matter[s] within the province of the jury. Nevertheless, a trial justice, just as clearly, may disregard a jury's finding[s] on [credibility and fact] if in the exercise of his independent judgment, he concludes that the jury verdict 'fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence.'" *Yammerino v. Cranston Tennis Club, Inc.,* R.I., 416 A.2d 698, 700–01 (1980).

In the instant case, the trial justice concluded that the verdict was against the fair preponderance of the evidence for two reasons. First, as discussed above, he found that the jury weighed and evaluated evidence he determined to be incredible. Second, he found that juries "have feelings for the little guy against the big company and sometimes those feelings translate themselves into justice but in this case it did not." Thus, the trial justice determined that "prejudice or other improper influences" affected the jury's findings. *Yammerino,* 416 A.2d at 701. The award of the new-trial motion assures plaintiff that the "substantive issue will be fairly determined on the evidence * * *." *Id.*

We have reviewed all of the evidence presented below and are of the opinion that the trial justice did not overlook or misconceive relevant evidence, nor was he otherwise clearly wrong.

The defendant's appeal is denied and dismissed, the judgment ordering a new trial is affirmed, and the case is remanded to the Superior Court for a new trial on all issues.