LILLIAN AFFLICK *vs.* JOSEPH LAURENCE, JR.

JULY 17, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This action of trespass on the case for negligence was tried to a jury in the superior court and resulted in a verdict for the plaintiff for $2500. Thereafter the defendant moved for a new trial on the usual grounds, and on the further ground that the damages awarded were excessive. The trial justice denied defendant's motion as to the question of liability, but granted a new trial unless the plaintiff would remit all of the verdict in excess of $950. The plaintiff did not file a remittitur, but prosecuted the bill of exceptions now before us to the decision of the trial justice. No bill of exceptions was prosecuted by the defendant.

The only exception relied on by the plaintiff is to the decision of the trial justice with reference to the damages. The question of the defendant's liability is not before us.

In this situation two questions are presented for our determination. First, was the trial justice clearly wrong in ordering a remittitur in any amount? Second, was he clearly wrong in reducing the plaintiff's verdict to $950?

The plaintiff, a widow, was injured in a head-on collision between a Chevrolet roadster, which she was driving, and an Oldsmobile sedan, driven by the defendant, which the latter admitted was "quite a bit" heavier than the Chevrolet. The plaintiff's minor daughter, who was riding with her, was also injured. The accident happened in the afternoon of November 29, 1938 in the town of West Warwick.

Although no recovery is sought in this case for the damage to the automobile which the plaintiff was driving, still the nature and extent of the injuries to both automobiles throw some light on the force that was applied to the plaintiff in the collision. The left front fender, left headlight, front axle, spring screen, and windshield of the automobile driven by the plaintiff were damaged. The bumper of defendant's car was broken, and its grille and both front mudguards considerably damaged.

In her declaration the plaintiff alleged "injuries about her head, face, mouth, . . . back, including several fractured vertebrae, and severe mental and nervous shock". Her bill of particulars limited her head injuries to cuts and bruises about the mouth, and loss of a front tooth and damage to a bridge. The injury to her back is therein described as "a discolored area on the right side of her back beginning at the 10th rib and extending downward and outward . . . ." The bill of particulars specified that she "suffered a fracture of the 10th and 11th vertebrae with pain over the spinous processes from the 6th to the 12th thoracic vertebrae."

The evidence is undisputed that as a result of the collision the plaintiff lost a front tooth and suffered other minor injuries to her mouth. She was without such tooth for nearly two months before the injury could be remedied by a dentist. The plaintiff's chief cause of complaint, however,

was the injury to her back. Her testimony on this point was consistent with the allegations in her declaration and in her bill of particulars, and was supported by medical testimony introduced in her behalf. In addition, she testified with reference to her pain and suffering, to her resulting nervousness, to her loss of wages, and to the medical expenses for herself and for her daughter.

Plaintiff testified that in the collision she suffered an "awful jolt"; that this jolt threw her head back and her body forward again; that she felt pain in her back almost immediately after the collision; and that as this pain continued she consulted Dr. Charles S. Christie a few days after the accident. The latter testified that when he examined the plaintiff on December 2, 1938 she had a bruise in the region of the tenth rib at its junction with the vertebrae. He X-rayed her *ribs* on the following day and these films showed no fracture. He thereupon prescribed baking and massage treatments. On December 7, 1938 he went on a short vacation and left the plaintiff under the care of Dr. Merrill.

The latter's testimony was that when he examined the plaintiff she was suffering pain in the middle of her back; that this condition did not improve with baking and massage treatments; and that he discussed the case with Dr. Christie, when the latter returned, and advised that further X-ray pictures be taken. This was done on December 22 and on December 30, 1938, when pictures of the *spine* were taken. These X-ray films were submitted for interpretation to Dr. Russell R. Hunt, an expert on radiology. He reported to Dr. Christie, and also testified at the trial, that the films disclosed a crushed fracture of the anterior inferior angle of the top of the tenth dorsal vertebrae, and a crushed fracture of the anterior superior angle of the eleventh dorsal vertebrae. These fractures, however, did not materially collapse the bodies of the vertebrae.

Under these circumstances, Dr. Christie at once referred the plaintiff to Dr. Roland Hammond, an orthopedic surgeon. The latter testified that his physical examination of

the plaintiff on December 31, 1938 disclosed a general tenderness over the spinal processes, which tenderness extended from the level of the sixth dorsal vertebrae to the twelfth dorsal vertebrae. He then examined the X-ray films of the plaintiff's spine and found that "they showed fractures, compression and fractures, of the lower angle of the tenth and the upper angle of the eleventh dorsal vertebrae . . . ." As treatment he ordered a back brace, which he fitted to the plaintiff on January 10, 1939.

She was treated by Dr. Hammond for over eleven months. He further testified that on May 31, 1939 he made an "X-ray examination of her spine, which showed that the fractures . . . had healed in, and the bodies showed no collapse. The brace was omitted part of the time as her back was able to stand it, and she was seen for the last time December 5, 1939 not wearing the brace, having no pain but a slight tired feeling after using the back, and I discharged her from further treatments." He also testified that the type of injury which the plaintiff had sustained would produce a dull pain or ache with use of the back; that she would not be able to do all kinds of housework for a period of about six months following December 1939, and that thereafter she would probably feel "dull discomfort there, particularly on excessive use of the back." He therefore advised her to do light work and to rest as much as possible. Upon being questioned as to the probable cause of plaintiff's injury, Dr. Hammond testified as follows: "If she was thrown against the back of the front seat, and then thrown forward again, with the body in a flexed position, that would be sufficient to produce such an injury to the spine."

At the trial two medical witnesses testified for the defendant, Dr. Edward A. McLaughlin, a general practitioner, and Dr. William A. Horan, an orthopedic surgeon. The former examined the plaintiff and the X-ray films of her spine on January 29, 1939. He testified that in his opinion the plaintiff was suffering with a "back pain"; that it was "questionable" if the X-ray films showed any fractures; and

that, if the fractures were real, there would be no "permanent disability, nor any appreciable disability or discomfort" one month after the date upon which he made his examination. In the report of his examination Dr. McLaughlin advised an opinion from an orthopedic surgeon. He also testified that he could not conceive how the plaintiff could have received a fracture of a vertebra in view of the story of the manner in which she was injured.

Dr. Horan testified that in his opinion the plaintiff, whom he examined for the first and only time on January 25, 1940, just before the trial, was suffering from arthritis of her dorsal vertebrae, which is quite a common condition in middle life, and further, that from his interpretation of plaintiff's X-ray films, which he had previously examined, he did "not think there was a fracture of the vertebrae, probably because any later pictures taken did not bear out the evidence shown in the first picture." In view of this answer it may be recalled that the first X-ray pictures of the plaintiff's spine were taken December 22, 1938; that Dr. Hammond treated, by means of a body brace, whatever injury those pictures showed; that the plaintiff responded to such treatment but not to massage and baking; and that further X-ray pictures of the plaintiff's spine were taken at Dr. Hammond's direction on May 31, 1939 and showed that the injuries in question had healed.

The trial justice, who decided defendant's motion for a new trial from the bench, apparently did not believe that the plaintiff received, as a result of the accident, the back injury of which she complained, although no other explanation of such injury was suggested by the defendant. The trial justice reached his conclusion largely because of a general illustration given by Dr. Hammond as to the manner in which the plaintiff might have been thrown forward and backward at the time of the accident, rather than by considering the plaintiff's testimony of what happened to her at that time. Whatever Dr. Hammond's illustration may have been, his testimony was clear that if the plaintiff was

thrown against the back of the front seat and then thrown forward again with her body in a flexed position, that would, in his opinion, be sufficient to produce the injury in question to plaintiff's spine. This testimony of Dr. Hammond deserves consideration in view of the plaintiff's testimony, hereinbefore referred to, describing the manner in which she was thrown about in the automobile at the time of the collision.

In any event, the evidence was reasonably open to two different conclusions. One was that the force of the collision tossed the plaintiff about in such a way as to injure the vertebrae in her back; and the other, that whatever tossing she may have received did not result in any such injury. By its verdict of $2500 the jury clearly adopted the first of these two views. Unless the jury's verdict was against the weight of the credible evidence on this point, the trial justice was not justified in reducing the amount of the damages awarded, even though his own personal judgment might have inclined him to a contrary conclusion.

The trial justice, however, in ordering a new trial unless the damages were reduced, apparently failed to consider all of the material evidence with reference to the nature and extent of the injury to plaintiff's back. In effect he held that because Dr. Hammond and Dr. Horan, both men of recognized standing in their profession, were diametrically opposed to each other in their respective interpretations of the X-ray films as to the existence of a fracture of the vertebrae, the plaintiff had failed to sustain the burden of proving such fracture; and he held that she had received merely a severe shaking up. However, the issue before the trial justice in this connection, under all the evidence in the case, was the extent of the injury to the plaintiff's back caused by the accident in question. Even if it may be assumed, for the purpose of argument, that the plaintiff had not successfully established that she had a fracture of the vertebrae, it did not necessarily follow that she had not suffered

a substantial injury to her back, resulting in pain and suffering and requiring medical attention.

The plaintiff, as we have already indicated, in her declaration and in her bill of particulars alleged injuries to her back *including* fractured vertebrae. If we eliminate the question of any fracture, there was still ample evidence, both medical and lay, to support the plaintiff's claim as set out in her declaration and bill of particulars as to her disabilities, pain and suffering, and the expenses due to the accident. In her testimony she described the injury to her back, and the testimony of her doctors and the surrounding circumstances reasonably supported her claim in that connection. She found no relief from baking and massage, but she did improve, and finally completely recovered, after wearing a brace and receiving other treatments for nearly a year from Dr. Hammond.

It may also be noted that the latter testified that the X-ray films showed "compression and fracture" of the vertebrae in question. Dr. Horan expressed no opinion as to any compression of the vertebrae. In our opinion, a fair consideration of all the evidence establishes that, as a natural and probable consequence of the violence exerted upon her at the time of the accident, the plaintiff suffered a substantial injury to her back, even if there was no fracture of the vertebrae.

Although the trial justice believed that the plaintiff had suffered only a severe shaking up, he apparently allowed all her medical bills for herself and daughter, with the exception of the bill of a doctor who had treated the plaintiff for nervousness about a year after the accident. He also allowed her to recover for damage to her daughter's clothing, and compensation for her own loss of wages for a period of six months following the accident, figured at $117, an amount which, under the evidence, certainly was not excessive. The total of all these items amounted to $468.96. Subtracting this sum from the $950 to which he reduced the verdict, he apparently allowed the plaintiff something

over $450 for pain and suffering and for her injuries, including the loss of a front tooth.

In his decision the trial justice made it clear that he was of the opinion that the plaintiff was exaggerating her injuries. In particular, he referred to the element of nervousness above referred to. In view of this situation, we cannot say that the trial justice was clearly wrong in ordering some remittitur. He had the advantage, which we do not have, of seeing and hearing the witnesses testify, and he apparently believed that the evidence as to the plaintiff's alleged nervousness, especially the medical testimony in that regard, had the effect of misleading the jury in connection with the extent of her injuries.

However, after a careful examination of all the evidence, and after giving due effect to his opinion as to the size of the verdict, we are satisfied that the trial justice was clearly wrong in requiring so large a remittitur as a condition for denying the motion for a new trial. There is always difficulty in fixing the amount of a remittitur in this class of cases; but taking into consideration all of the evidence before us, we are of the opinion that the plaintiff will be fully compensated for the injuries, losses, and suffering caused her by the accident in question by an award of $1968.96. This will allow her $1500 for pain and suffering, and for the injuries to her back and mouth, including the loss of a front tooth.

The plaintiff's exception is sustained, and the case is remitted to the superior court for a new trial unless the plaintiff, on or before July 30, 1941, shall file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $1968.96. In case the plaintiff shall file such remittitur, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

*Roland E. Meunier, Charles J. Bourgault,* for plaintiff.
*Quinn & Quinn, Michael DeCiantis,* for defendant.