411 A.2d 296.

IN RE SUSAN.

FEBRUARY 11, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

DORIS, J.   This is an appeal by the respondent juvenile from a decree of the Family Court adjudicating her to be delinquent under G.L. 1956 (1969 Reenactment) §14-1-3(f)[1] for having struck and injured a certified public school teacher in violation of §11-5-7[2] and also from a decree placing the respondent under the supervision of the probation department for a period of one year on the condition that she do some volunteer work in the community. Pending disposition of this appeal, a stay of the probation order was granted by this court.

The record indicates that on April 28, 1978, the East Greenwich Police Department filed a petition in Family Court alleging that respondent was a delinquent because she had knowingly and willfully struck Eileen L. Geigen (Geigen), a certified public school teacher in East Greenwich, causing her bodily harm. Two different versions of the incident were testified to at the hearing before a justice of the Family Court. Geigen testified that on April 25, 1978, a conference was held at East Greenwich High School in regard to Susan's performance in class. Present at the conference were Susan, her parents, Geigen, and other teachers. Geigen stated that Susan, who was visibly upset, left the conference and went to the school's office where she obtained a hallway pass in order to proceed to her physical education class. Geigen testified that she observed Susan walking in an

---

[1]General Laws 1956 (1969 Reenactment) §14-1-3(f) reads as follows:

"The term 'delinquent' when applied to a child shall mean and include any child --

"Who has committed any offense which, if committed by an adult, would constitute a felony * * * ."

[2]General Laws 1956 (1969 Reenactment) §11-5-7, as enacted by P.L. 1972, ch. 208, §1 reads as follows:

"Assaults of certified public school teachers - Penalty. - Any person who shall knowingly and willfully strike a certified public school teacher causing bodily injury while said teacher is engaged in the performance of his/her duty shall be deemed to have committed a felony, and shall be imprisoned not exceeding three (3) years or fined not exceeding fifteen hundred dollars ($1,500) or both."

opposite direction from the location where the physical education class was being held, and told Susan to proceed to the gymnasium locker room. At this point, Geigen was following Susan since, according to her, it was her responsibility to make sure that Susan went to her physical education class. In order to proceed to the girls' locker room area it was necessary to pass through several doors. Geigen stated that Susan passed through one of the doors and then turned and pulled the door shut, which caused Geigen to be caught in the door and to yell "ouch." Susan, according to Geigen, then held the door pinned against her for about ten or fifteen seconds. Geigen stated that her arm, hip, and thigh were pinned between the door and the doorjamb, that the fingernail on her right ringfinger was broken, and that the ringfinger turned red and immediately began to swell. Geigen stated that Susan then released the door, went toward the girls' locker room door and yelled that she would punch Geigen. Geigen testified that Susan then pinned her between the door and doorjamb of the locker room door for about fifteen seconds, after which Susan reported to the physical education class. Geigen denied that she had pulled Susan's sweater.

Geigen testified that she reported the incident to the assistant principal and then visited the school nurse, who applied ice packs to her hand and leg and advised Geigen to go to the hospital at the end of the day. Geigen stated that at the end of the day she reported the incident to the police and that she was examined at the South County Hospital.

The school nurse testified that Geigen visited her on the morning of April 25, 1978, that she observed a broken fingernail on her right ringfinger, which was swollen and red, and that Geigen's thigh was red, warm, and apparently bruised. The nurse said that she advised Geigen to keep her leg elevated, to apply ice packs, and to visit the hospital emergency room at the end of the day.

Susan, who at the time of the hearing had finished high school and was in the process of applying for college admission, told a different story. She admitted that Geigen had fol-

lowed her toward the girls' locker room. She denied that she had pinned Geigen in either door. She stated that she never heard the teacher say "ouch." Susan testified that as she went through the second door, Geigen grabbed her by the arm and the hood of her sweater and that she then nudged Geigen and told her "to get her hands off of me." She denied that the incident occurred as described by Geigen.

Gina Toro, a classmate and friend of Susan, testified that she witnessed the incident. She stated that, although Geigen and Susan had argued and were angry, Susan did not pin Geigen in either of the doors. Gina testified that Geigen grabbed Susan by the hood of her sweater.

The trial justice reviewed the testimony and stated that since there was a conflict in the testimony, the issue was one of credibility. He noted that "all of the witnesses appear to be most creditable and in my mind I cannot feel that any person or any of the witnesses in this matter are not telling it as they best recall it." The trial justice, continuing, stated:

> "The complaining witness went to the nurse in close enough proximity to this situation so that the Court is satisfied that there must have been something that occurred that caused the injury to the complaining witness. There has been absolutely no testimony to the Court to indicate anything else that may have happened other than as the complaining witness tells her story. If there had been some contact between the complaining witness and any other person, place or thing that the Court could consider, there would possibly be some doubt in my mind as to how this injury occurred. I am satisfied, and I find that the petitioner was injured as she has stated. There is no explanation other than the facts as she has stated, and I am satisfied that it was through the conduct of the respondent in this matter that the complaining witness was injured, and I find that the Town of East Greenwich has proved beyond a reasonable doubt that the respondent in this case did knowingly strike one Eileen L. Geigen, a certified public school teacher causing her bodily injury."

The trial justice on March 8, 1979, entered a decree adjudging Susan to be delinquent - from which decree, respondent has appealed. Thereafter, after receiving a presentence report, the trial justice entered a decree placing Susan under the supervision of the probation department for one year with the condition that she do some volunteer work in the community. The respondent has also appealed from that decree, the operation of which was stayed by this court pending disposition of respondent's appeal.

The respondent on appeal contends that the trial justice erred in adjudging her delinquent. She argues that since the trial justice indicated that all the witnesses were credible, that he could not have found beyond a reasonable doubt that she had violated §11-5-7.

The petitioner states that even though the trial justice said that he thought all of the witnesses *appeared* to be credible and *to be telling it as they best recalled it,* he nevertheless found that he believed Geigen's account of the incident and that said finding was not clearly wrong.

In a criminal prosecution the state is bound to prove each and every element of an offense beyond a reasonable doubt. *State* v. *Welch,* 117 R.I. 107, 109, 363 A.2d 1356, 1358 (1976); *State* v. *Koohy,* 105 R.I. 197, 201, 250 A.2d 711, 714 (1969). Juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt when charged with a criminal offense. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *In re Victor A. Pereira,* 111 R.I. 712, 714, 306 A.2d 821, 823 (1973).

In the instant case there was clearly testimony which, if believed, would have proved beyond a reasonable doubt each element of the alleged violation of §11-5-7.

The question to be resolved is whether or not the trial justice indicated which evidence he believed. A trial justice's decision in a non-jury civil or criminal trial does not require an exhaustive analysis of the evidence or a specific statement of all the reasons for his conclusions. Instead it will suffice if

the decision reasonably indicates that he exercised his independent judgment in passing on the weight of the testimony and the credibility of the witnesses, and a decision in accordance with these standards is entitled to great weight and will not be disturbed by this court unless it is incorrect as a matter of law or is otherwise clearly wrong. *State* v. *Aurgemma*, 116 R.I. 425, 436, 358 A.2d 46, 52 (1976). Also, where the trier of fact expressly accepts the testimony of a witness, which testimony is in conflict with that of another, the acceptance of the one is an implied rejection of the other. *State* v. *Correia*, 106 R.I. 655, 664, 262 A.2d 619, 624 (1970); *Flynn* v. *Pearce*, 106 R.I. 323, 329, 259 A.2d 401, 404 (1969).

Here, the trial justice made an exhaustive review of the evidence and recognized that the case involved conflicting testimony and the credibility of witnesses. It is true that before making his ultimate findings, the trial justice did state that it was *most difficult* for him to find that any of the witnesses were not credible and that he did not feel that any of the witnesses were not testifying as best they could recall. We are of the opinion that these statements were nothing more than assurance to the witnesses that he was not accusing any of them of deliberately lying. He then stated the basis for his decision, which basis was his finding that the injuries sustained by Geigen were verified by her visit to the school nurse, and that in the absence of any other explanation for her injuries, the teacher must have been injured as she had testified. The acceptance by the trial justice of Geigen's testimony was an implied rejection of the conflicting testimony of Susan and her friend.

Since the trial justice did not overlook or misconceive evidence on a controlling issue, his decision adjudging respondent delinquent is entitled to great weight and we will not disturb it on appeal.

The respondent next argues that the trial justice abused his discretion in placing respondent under the supervision of the probation department for one year and imposing the condition that she do volunteer work in the community. She argues

that the order imposed was not in her best interest because beginning in September 1979, she will be attending college in the state of New Hampshire and that the imposed condition of performing volunteer community work will interfere with her college education.

The town points out that under the Interstate Compact on Juveniles, G.L. 1956 (1969 Reenactment) §14-6-1 et seq., a compact to which New Hampshire subscribes, Susan's probationary period could be served and supervised in New Hampshire and the community work performed there, and that consequently the condition imposed by the trial justice would not interfere with Susan's collegiate activities and therefore the order was not against Susan's best interests.

The power of the Family Court to order disposition of a child is contained in G.L. 1956 (1969 Reenactment) §14-1-32 as amended by P.L. 1976, ch. 292, §1 which provides in part that:

> "If the court shall find that a child is delinquent * * * within the provisions of this chapter, it may by order duly entered * * * :
>
> "Place the child on probation * * * ."

Section 14-1-33 - Supervision of child placed on probation, provides in part that:

> "Whenever the court shall place a child on probation, said court may do so upon such terms and conditions, not inconsistent with law, as said court may deem best for the welfare of the child * * * ."

Generally, when imposing conditions of probation, a court is vested with broad discretion in order that the best interest of the juvenile will be served, and its exercise of that discretion will not be disturbed unless such discretion is abused. *In re Bacon,* 49 Cal. Rptr. 322, 337, 240 Cal. App. 2d 34 (1966); *see* 43 C.J.S. *Infants* 78(b) at 292 (1978).

Here, the question of abuse of discretion by the trial justice could arise only if the probation and conditions imposed

interfered with Susan's attendance at college in New Hampshire. At oral argument, we were advised that Susan is attending college in New Hampshire and that New Hampshire probation officials have agreed to supervise Susan under the terms of the Interstate Compact on Juveniles. Since the order of probation, including the condition of community service, will not interfere with Susan's college attendance, we cannot say that the trial justice abused his discretion.

The appeal of the respondent is denied and dismissed, the decrees appealed from are sustained, the stay heretofore entered is vacated and the case is remanded to the Family Court.

*A. Earl Shaw, Jr.*, Town Solicitor, for petitioner.

*Higgins, Cavanagh & Cooney, Gerald C. DeMaria*, for respondent.