Antonio T. FONSECA Administrator et al.

v.

John BALZANO et al.

No. 80–56–Appeal.

Supreme Court of Rhode Island.

Jan. 7, 1983.

James M. Shannahan, Thomas H. Quinn, Jr., Providence, for plaintiffs.

Gunning, LaFazia & Gnys, Inc., Raymond A. LaFazia, Providence, for defendants.

OPINION

SHEA, Justice.

In a civil action, the plaintiffs allege that the defendants' negligence caused their daughter's death. She was fatally injured in an automobile accident. After trial in 1979, a jury returned a verdict for the defendants. The plaintiffs' motion for new trial was denied; they now appeal from the denial of that motion. We affirm the judgment below.

On June 8, 1971, eight-year-old Elizabeth Fonseca was hit by a car seconds after she had disembarked from a school bus across the street from her home in Bristol, Rhode Island. Elizabeth died one week later from injuries sustained in that accident.

Initially, in a complaint filed May 26, 1972, and amended on May 21, 1975, plaintiffs, Antonio T. Fonseca and Patricia A. Fonseca, Elizabeth's parents, and Antonio in his capacity as administrator of Elizabeth's estate, alleged that Elizabeth had died as a result of the negligence of John Balzano (the bus driver), the bus company, the owner of the automobile that struck the child, the driver of the automobile and also the town of Bristol.[1] The jury returned verdicts against each of the defendants. After judgments were entered, both plaintiffs and defendants moved for new trials and additurs or remittiturs respectively. The motions were denied. The defendants appealed and plaintiffs cross-appealed from the entry of those judgments. Thereafter, by stipulation approved by the trial justice, all parties withdrew their respective appeals provided that the judgments entered against John Balzano individually and Thomas Balzano, d/b/a Balzano Bus Co. and Bristol Taxi & Bus, Inc., would be vacated and these causes tried again. That new trial was held in March of 1979 and gives rise to the appeal before us.[2]

The evidence presented is not complicated. On June 8, 1971, John Balzano was driving a thirty-eight foot-long school bus east on Chestnut Street in Bristol, Rhode Island. He recalled that he stopped the bus six to eight feet from the right-hand curb near Jane Lane to discharge eight or nine school children, including Elizabeth. As he stopped the bus, he activated the flashing lights. A red pickup truck that was heading west (that is, the opposite direction) slowed down and came to a stop at the same time as the bus.

When he looked in the rear-view mirror, both before he stopped the bus and at the time he actually stopped, Mr. Balzano saw no cars approaching. When he opened the bus door, he warned the children that "if they had to cross, make sure there were no cars coming." As the children began exiting from the school bus, he saw a car 400 feet to the rear. He watched the car approach. When the vehicle was four to five car lengths from the rear of the bus, he saw that the driver of the car was not looking straight ahead but instead was looking at a girl who was a passenger in the car.

Mr. Balzano testified that at this point Elizabeth Fonseca was ten to fifteen feet in front of the bus walking diagonally across the street toward her home. He watched the vehicle until he was "absolutely sure" that the driver was not going to stop, and he then sounded the horn and stuck his arm out the window, waving it in the air to signal the child and the driver. He moved the bus to within six feet of the center line to block the oncoming car, hoping the vehicle would hit the bus rather than Elizabeth. When Elizabeth was close to the center line of the street, she was struck by the vehicle. He shut off the bus engine and ran to the child, who lay motionless in the road. Mr. Balzano stated he could not get Elizabeth's pulse.

The posted speed limit on the road where the accident occurred was 35 m.p.h. Mr. Balzano estimated that the vehicle that struck Elizabeth was traveling at 50 m.p.h. or more before it began to skid.[3] There was evidence that corroborated Mr. Balzano's testimony regarding the speed and direction of the car that struck the child. However, Manuel Silveira, the driver of the

---

1. By stipulation the town was dropped as a party defendant prior to trial.

2. During the trial, John Balzano testified that he, with his wife, owned Bristol Bus Company but that the bus at the time of the accident was owned by Bristol Taxi & Bus Company. By the time of this trial, the name of the business had been changed to Bristol Bus Company. There-fore, the trial proceeded against this corporation and John Balzano.

3. Mr. Balzano was apparently so convinced of the car operator's speed that he assaulted the driver, saying, "[Y]ou killed her." Also, other testimony established that the skid marks from the car began at the rear of the school bus and continued for ninety-three feet.

car, testified he had been driving at 35 m.p.h. and that he did not recall either looking at his passenger just prior to the accident, or hearing the bus sound its horn. Deborah Silveira, the driver's passenger (now his wife), did testify that she was speaking to Manuel at the time of the accident.

Some passengers on the school bus that day testified that they remembered that the bus "jerked" forward after it had stopped. One of these witnesses recalled that he had heard the sound of a horn. However, Elizabeth's brother and sister, also passengers on the bus at the time, testified that the bus did not move after it had stopped. In fact, Elizabeth's brother remembered placing his hand on the front of the bus while he was crossing the street.

Evidence was introduced establishing hospital and medical expenses incurred by the Fonsecas as a result of the accident and also providing detailed expert testimony projecting Elizabeth's loss of earning capacity over the course of her life expectancy.

On March 23, 1979, the jury found for defendants. On appeal plaintiffs claim the trial justice erred in denying their motion for new trial.

The plaintiffs advance an untenable argument. They contend that although the trial justice summarized the testimony, he expressly accepted the testimony of Mr. Balzano without expressly rejecting other witnesses' testimony that contradicted his. They argue that because the trial justice did not expressly articulate this process, he improperly performed his duties and that therefore a new trial should be granted. Such a position flies in the face of settled law.

■ As this court has said on numerous occasions, and most recently in *Connors v. Gasbarro*, R.I., 448 A.2d 756, 759 (1982), the trial justice, when considering a motion for new trial,

"brings into play his or her more experienced judgment by independently reviewing all of the material evidence in the light of the charge to the jury, passing upon the weight thereof, and assessing the credibility of the witnesses who appeared at trial."

The trial justice then must determine whether the evidence and the reasonable inferences to be drawn therefrom are so evenly balanced that reasonable persons could arrive at different conclusions. If so, the new trial motion must be denied. *Id.* However, if the trial justice concludes that the jury's verdict is against the fair preponderance of the evidence, a new trial is a necessity. *Id.* A trial justice's decision on a motion for new trial is entitled to great weight and will not be disturbed on appeal unless the judge has overlooked or misconceived material evidence or is otherwise clearly wrong. *Id.*

■ In the case before us, the decision on the new trial motion establishes that the trial justice exhaustively reviewed all the testimony. The plaintiffs' contention that the judge erred when he expressly accepted Mr. Balzano's testimony without expressly rejecting testimony of other witnesses ignores our many previous opinions on this question. This court has held that when the fact-finder expressly accepts the testimony of a witness, and that testimony conflicts with another witness's, the acceptance of the testimony of the one is implied rejection of the testimony of the other. *E.g., In re Susan*, R.I., 411 A.2d 296 (1980); *State v. Correia*, 106 R.I. 655, 262 A.2d 619 (1970); *Flynn v. Pearce*, 106 R.I. 323, 259 A.2d 401 (1969). There is no merit to plaintiff's position on this issue.

■ The plaintiffs claim further that the trial justice overlooked or misconceived evidence when upholding the jury's verdict. The plaintiffs argue that the physical evidence demonstrates that Mr. Balzano could not have moved the bus in an attempt to block the vehicle as he testified. Evidence established that the street in question was forty-four feet wide and the bus eight feet wide. According to Mr. Balzano, he initially stopped the bus six to eight feet from the street's right-hand curb. The plaintiffs assert that Mr. Balzano's testimony was contradictory since he also testified that he

moved the bus to the left to within six feet of the center line to block the oncoming car. They state that he could not have moved his bus to within six feet of the center line because it was already within six feet of the center line (which computation is correct if the bus was stopped eight feet from the right-hand curb and the bus measures eight feet wide). The deficiency in this reasoning is that plaintiffs fail to acknowledge that defendant testified the bus could have been *six* to eight feet from the right-hand curb. Therefore, if the bus was stopped six feet from the curb, Mr. Balzano could have then moved his eight-foot-wide bus two feet, to be within six feet of the center line. There is no inherent improbability in the evidence on this point.

The plaintiffs' other claims that the trial justice overlooked or misconceived evidence are all without foundation. The plaintiffs challenge testimony that indicated that Mr. Balzano checked his rear-view mirror when bringing the bus to a halt and noted that no car was visible for 1,400 feet behind him. The defendant testified that he opened the door to let the children off and then once again looked in his mirror, this time seeing the vehicle about 400 feet to the rear. The plaintiffs claim this testimony is contradictory, for it would mean that the automobile traveled more than 1,000 feet in only "a couple of seconds." The weakness in plaintiffs' argument is that it fails to account for the time between Mr. Balzano's first check of his mirror and the time the door opened to let the children exit. In this period, the bus would have come to a full stop and eight or nine children would have risen from their seats and proceeded down the center aisle to the front of the bus while defendant warned them to check the street before crossing. At that point the driver opened the bus doors and the children began exiting; a second or two later he rechecked his rearview mirror. Many seconds, even fifteen to twenty, could easily have elapsed during this interval. Therefore, Mr. Balzano's testimony was not self-contradictory.

Furthermore, even if plaintiffs had been able to demonstrate that the trial justice overlooked or misconceived evidence, this court would have applied the so-called appellate-rule. When applying that rule, we look at the evidence in the light most favorable to the party prevailing before the jury, and if there is any competent evidence to support the jury's verdict, the motion for new trial is denied. *E.g., Connors v. Gasbarro,* R.I., 448 A.2d at 759; *Morinville v. Morinville,* 116 R.I. 507, 512–13, 359 A.2d 48, 51–52 (1976).

Viewing the evidence in a light most favorable to the defendant, we find there was competent evidence to establish that Mr. Balzano acted in a reasonably prudent manner. He pulled the bus to the side of the road, activated the red flashing lights, checked his mirror before discharging the passengers, and warned the children as they stepped off the bus. When confronted with the fast-approaching vehicle, he sounded the horn, waved his arm, and attempted to block the moving car with the bus. Relying upon our review of all the evidence in the record, we find it clear that the trial justice properly denied the motion for new trial.

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.