Marylou COTRONA

v.

JOHNSON & WALES COLLEGE.

No. 83–92–Appeal.

Supreme Court of Rhode Island.

Nov. 27, 1985.

Thomas W. Pearlman, Pearlman & Vogel, Providence, for plaintiff.

Robert J. Quigley, Jr., Gerald C. DeMaria, Higgins Cavanagh & Cooney, Providence, for defendant.

## OPINION

SHEA, Justice.

The matter before the court arises out of an incident that occurred at a dormitory of the defendant, Johnson and Wales College. The plaintiff, Marylou Cotrona, a student at Johnson and Wales, sustained injury to her knee necessitating extensive treatment and surgery. She brought suit against the college. After trial a jury returned a verdict for the plaintiff. The defendant moved for a new trial, and the trial justice granted the motion. The plaintiff now appeals from the granting of the new trial. We affirm.

The relevant facts, although not complicated, are in dispute. In her amended complaint plaintiff alleged that she was injured on December 14, 1976, when she slipped and fell on a marble staircase in a dormitory in which she lived, which was owned and operated by defendant college.

The plaintiff charged defendant with negligently failing to maintain the stairway, negligently failing to warn of the dangerous condition, and a breach of contract. Her complaint also contained a count alleging liability under the doctrine of res ipsa loquitur.

At trial conflicting evidence was presented about the manner in which plaintiff descended the staircase at Johnson and Wales College. The plaintiff testified that she had begun on a landing and then "walked down the stairs very carefully." Her right foot slipped out from under her, and she reached for the railing but there was none. She fell forward, hitting her knee, and continued to fall down the entire flight coming to rest on the lower landing. The plaintiff testified that she had had difficulty with these same stairs on previous occasions, but she had attributed those incidents to water on the stairs. At the time of the fall she was wearing only knee socks.

On cross-examination plaintiff denied that she had been running or hurrying from the upper flight of stairs and across the landing. She did concede that she had not stopped when she reached the landing but continued from the upper stairs in "one continuous motion." She denied that she had told other people after the accident that she had been running down the stairway. On cross-examination she admitted that she had not fallen forward as she had originally testified, but rather she had hit her back first when she fell.

Two witnesses testified that they had seen Cotrona's accident. They testified that she had been running or hurrying down the stairs when she fell. On cross-examination one witness testified that plaintiff had run down the stairs to the landing and down the next flight without stopping at the top of the stairs. The other testified on cross-examination that she had observed plaintiff descending the stairs in a hurried manner.

A third witness also testified about plaintiff's fall. She was Linda McGregor, the wife of the Johnson and Wales bursar, who herself became the resident manager of the dormitory in question after the fall and who said she was plaintiff's friend. McGregor stated that plaintiff had told her that "she'd been coming—she was running down the stairs."

On being recalled to the stand, Cotrona testified that she had never told McGregor that the accident was her own fault. Instead, Cotrona testified that she had told McGregor that she had been walking carefully down the stairway and slipped on the landing. Responding to further inquiry, Cotrona also testified that neither had she ever told one of the two other eyewitnesses that she had been running.

The trial justice submitted four written interrogatories to be answered by the jury. The jury's answers to the interrogatories were (1) that defendant Johnson and Wales College was guilty of negligence that was the proximate cause of plaintiff's injuries, (2) that plaintiff did not appreciate or voluntarily assume the risk of falling and therefore was not guilty of any negligence, (3) that defendant was 100 percent negligent, and (4) that plaintiff's damages amounted to $350,000.

The defendant filed a timely motion for a new trial. After reviewing the evidence in considerable detail, the trial justice held that the jury's appraisal of liability was against the fair preponderance of the evidence and granted the motion.

The plaintiff appealed. She contends that the trial justice erred in that he overlooked and/or misconceived material evidence. In the alternative, plaintiff argues that in the event this court finds that the granting of defendant's motion for new trial was proper, the new trial should be confined to the issue of liability only, leaving the jury's determination of damages intact.

On March 19, 1985, pursuant to an order of this court, plaintiff appeared to show cause why her appeal from the grant of defendant's motion for a new trial should not be summarily dismissed. The court concluded that cause was shown, but we noted that the record makes it clear that in granting a new trial, the trial justice expressed the belief that although he had no objection to the damages awarded by the jury, he disagreed with the jury's apportionment of negligence between the parties. The trial justice stated that after his independent appraisal of the evidence in passing on the motion for new trial, he would have found negligence on the part of plaintiff at 50 percent. He then granted an unconditional new trial, believing that he was powerless to reassess plaintiff's comparative negligence and to utilize the mechanism of remittitur. He reasoned that comparative fault is a factual determination to be made by the jury.

Because neither side had addressed the question of the trial justice's power to independently assess the plaintiff's comparative negligence, we directed the litigants to address this issue in their briefs.

## Motion For New Trial

This court has on many occasions restated the rule, clearly enunciated in *Barbato v. Epstein*, 97 R.I. 191, 196 A.2d 836 (1964), governing the standards to be used in ruling on a motion for a new trial. A trial justice, when considering a motion for a new trial, assumes the role of a seventh or superjuror and "brings into play his or her more experienced judgment by independently reviewing all of the material evidence in the light of the charge to the jury,

passing upon the weight thereof, and assessing the credibility of the witnesses who appeared at trial." *Connors v. Gasbarro*, 448 A.2d 756, 759 (R.I.1982). The trial justice then must determine whether the evidence and the reasonable inferences that flow therefrom are in such equilibrium that reasonable persons could arrive at different results in deciding the case. If so, the new-trial motion must be denied. However, if the trial justice concludes that the jury's verdict is against the fair preponderance of the evidence, a new trial must be ordered. *Kelly v. C.H. Sprague & Sons Co.*, 455 A.2d 1302 (R.I.1983); *Fonseca v. Balzano*, 454 A.2d 700 (R.I.1983). The trial justice need not engage in an exhaustive review and analysis of all of the evidence and testimony in rendering his or her decision but need only make reference to that which motivates the ruling. This enables the reviewing court to determine whether the trial justice was warranted in reaching the decision. *Zarrella v. Robinson*, 460 A.2d 415 (R.I.1983); *Yammerino v. Cranston Tennis Club, Inc.*, 416 A.2d 698 (R.I. 1980); *Pimental v. Postoian*, 121 R.I. 6, 393 A.2d 1097 (1978). Once made, a trial justice's decision on a motion for new trial is afforded great weight and will be overturned on appeal only if the justice has overlooked or misconceived material evidence or is otherwise clearly wrong. *Zarrella v. Robinson*, 460 A.2d 415 (R.I.1983); *Fonseca v. Balzano*, 454 A.2d 700 (R.I. 1983); *Connors v. Gasbarro*, 448 A.2d 756 (R.I.1982).

In the case before us, the record shows that the trial justice exhaustively reviewed all of the testimony and carried out his responsibilities with exemplary thoroughness. He reserved his decision on the motion so that he could thoroughly review the evidence. Before rendering his decision from the bench, he recited the standards established by this court governing the trial justice's role "in passing on a motion for a new trial just so the Supreme Court will know that I was aware of what that duty was." He set forth those standards correctly.

In rendering his decision, the trial justice summarized the testimony at some length and gave his reasons for finding some witnesses more credible than others. He said that there were three critical issues that must be examined in reaching a decision: (1) whether the stairs were defective and whether defendant had actual or constructive notice of the defect and failed to take reasonable steps to correct it, (2) whether plaintiff was herself negligent, and (3) whether the jury's damage award was excessive.

With respect to the first issue, the trial justice noted that there was some conflict in the testimony, but he found sufficient evidence to warrant a finding of negligence on the part of Johnson and Wales because the stairs were worn and slippery to some degree and there was no handrail on the landing. Regarding the damages issue, a "significant disagreement" was noted "as to the amount of the plaintiff's loss of earning capacity in the future." However, on balance, he was satisfied that the economic loss, coupled with the pain and suffering undergone by plaintiff, could lead to a conclusion that the jury's determination of damages was not unreasonable.

The trial justice found the issue of plaintiff's negligence to be troublesome. In determining whether plaintiff herself was partially responsible for her fall, thereby giving rise to an assessment of comparative negligence, the trial justice referred to two facts in evidence. First, was plaintiff's admission that she was wearing socks only and not shoes at the time of the fall plus the conflicting evidence of her knowledge of the slippery nature of the stairs at the time of the fall. Second, was the evidence that plaintiff was running down the stairs at the time she fell.

Noting that the testimony about whether plaintiff had in fact been running on the stairs was "hotly disputed," the court found it necessary to resolve the conflict by determining which of the witnesses was more credible. The trial justice placed Lin-

da McGregor at the top of the credibility ranking. He found her to be very candid and straightforward and he observed that she had no stake in the outcome of the case. The judge noted that Mrs. McGregor's husband was the bursar at Johnson and Wales. He did not feel, however, that this association had any effect on McGregor's testimony. The trial justice placed one of the eyewitnesses at the bottom of the court's ranking of credibility. The plaintiff was placed in the middle of the credibility ranking because "she had a direct stake in the outcome of this case, [her] memory and recollection of the events was far from clear [and her testimony was] rather vague and uncertain, and in many situations she recanted somewhat of her testimony." The trial justice did not find plaintiff's testimony to be as reliable as that of Mrs. McGregor, and therefore, the trial justice accepted McGregor's testimony, finding that plaintiff was indeed running at the time she fell.

Having ranked the witnesses' credibility, the trial justice concluded:

"The fact that [plaintiff] was wearing socks alone together with knowledge of the slipperiness of the stairs is in itself a strong indication of negligence on the part of the plaintiff. Wearing socks together with running virtually compels a finding of some comparative negligence on the part of the plaintiff, and given those elements it seems to the Court that reasonable minds could not have concluded that the plaintiff was totally, without any responsibility or free from all fault with respect to this fall."

Without a correct appraisal of the relative liability of the parties, the trial justice felt it was not within his powers to order a remittitur as an alternative to an unconditional new trial. The trial justice therefore granted defendant's motion for a new trial.

The plaintiff contends that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong in granting defendant's motion for a new trial. The plaintiff asserts that the credibility ranking was not correct in light of the evidence and the testimony presented and that the judge misconceived evidence in determining that plaintiff had been aware of the slippery nature of the stairs because she had said she had slipped on the same stairs on two previous occasions. The plaintiff further contends that reconciliation of inconsistencies in a witness's testimony is solely within the province of the jury, and also that the trial judge, while specifically accepting some testimony as credible, erred because the evidence presented by plaintiff was not specifically rejected. We find each of these assertions to be wholly without merit.

Our review of the record below and the decision of the trial justice reveals that his findings were well supported by the evidence. A trial justice is free to reject testimony that is contradicted, impeached, abrogated by other positive testimony, inherently improbable, or contradicted when viewed in connection with other circumstances if he is satisfied of its falsity. *Gibbs Oil Co. v. Potter*, 471 A.2d 207 (R.I.1984). In the present case, it is clear that the evidence presented was in conflict. The trial justice disregarded some testimony because it was contradicted by other witnesses, some because plaintiff recanted some of her testimony, and some because of the inherent improbability that plaintiff did not appreciate the slipperiness of the stairs when she had slipped on the same stairs two previous times before the fall in issue. He also referred to the fact that she was wearing socks when she fell rather than shoes. The trial justice was free to make each of these findings by drawing proper inferences from the existing record. *Gibbs Oil Co. v. Potter*, 471 A.2d 207 (R.I.1984); *Roberts v. Wills*, 108 R.I. 586, 277 A.2d 754 (1971). In our opinion these findings do not in any way constitute an abuse of discretion.

■ The trial justice here was well within the bounds of his authority when he reassessed credibility and issues of fact after entrusting these functions to the jury. *Gibbs Oil Co. v. Potter*, 471 A.2d 207

(R.I.1984). We recognize that credibility and factfinding, like the determinations of liability and damages, are "clearly * * * matter[s] within the province of the jury. Nevertheless, [when responding to a motion for new trial] a trial justice, just as clearly, may disregard a jury's finding[s] on [credibility and fact] if in the exercise of his independent judgment, he concludes that the jury verdict 'fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence.'" *Yammerino v. Cranston Tennis Club, Inc.*, 416 A.2d at 700–01. In the case before us, the trial justice correctly determined that the jury did not properly measure plaintiff's liability. He acted properly in reviewing the testimony and passing on its credibility, fulfilling his duty to administer substantial justice.

The plaintiff's last contention that the judge erred when he expressly accepted McGregor's testimony without expressly rejecting her own testimony overlooks the settled body of law on this point. When the trial judge expressly accepts the testimony of one witness, an implied rejection of conflicting testimony flows from that acceptance. *E.g., Fonseca v. Balzano*, 454 A.2d 700 (R.I.1983); *In re Susan*, 122 R.I. 677, 411 A.2d 296 (1980); *State v. Correia*, 106 R.I. 655, 262 A.2d 619 (1970). Thus, plaintiff's claim of error is without foundation.

■ The plaintiff further contends that if we affirm the granting of the new-trial motion, the trial should be confined to the issue of liability, with the damages award left intact. In the past we have noted the trend toward limiting new trials to specific areas when feasible. However, we have emphasized that such severance is only appropriate "where the issue of damages was clearly distinct and readily separable from the issue of liability * * * ." *Brimbau v. Ausdale Equipment Rental Corp.*, 120 R.I. 670, 672, 389 A.2d 1254, 1255 (1978). We have also said that because cases involving personal injury can be highly emo-

tional, the power of this court to limit retrial to the issue of liability should be exercised cautiously. *Id.* Nevertheless, the question of what should be done in a given case is generally left to the sound discretion of the trial judge, *Kelly v. C.H. Sprague & Sons Co.*, 455 A.2d 1302 (R.I. 1983), and his or her determination will not be disturbed unless it clearly appears that such discretion was improperly exercised or abused. *Id.* In this case, the trial justice briefly examined the question of damages and found the jury's award not unreasonable, despite significant conflict in the testimony. Since plaintiff's apparent lack of candor might well have influenced the jury's assessment of damages as well as liability, the granting of a new trial would be appropriate. Thus, the trial judge clearly did not abuse his discretion in awarding defendant an unconditional new trial.

### Remittitur

■ The mechanisms of remittitur and additur have been mainstays in the arsenal of Rhode Island trial judges for some time. *See, e.g., Devine v. United Electric Railways Co.*, 85 R.I. 170, 128 A.2d 334 (1957); *Floyd v. Turgeon*, 68 R.I. 218, 27 A.2d 330 (1942); *Afflick v. Laurence*, 67 R.I. 188, 21 A.2d 245 (1941). They have become indispensable tools with which a trial justice may conditionally correct and modify a jury award that is found to be excessive or inadequate, such award being against the fair preponderance of the evidence. Through the use of these techniques trial judges are able to prevent the burdensome costs, delays, and harassments that accompany relitigation of the same issues while at the same time assuring the litigants substantial justice.

Traditionally, remittitur and additur have been used to correct jury awards in cases in which the jury's determination of damages fails to properly respond to the merits of the controversy or fails to administer substantial justice. Recently, this court in *Hynes v. Rochford*, 474 A.2d 449 (R.I. 1984), expanded upon this traditional appli-

cation of these techniques to offer a correction of a jury's damage award. We upheld a trial justice who utilized an additur to cure a jury's erroneous determination of the quantum of a litigant's liability. In *Hynes* the trial justice found that the jury had incorrectly determined the amount of the plaintiff's comparative fault and utilized the erroneous assessment of liability when computing the size of that plaintiff's award. Thus, the trial justice conditionally awarded an additur to allow the award to do substantial justice between the parties.

Here, the record indicates that the trial justice, as in *Hynes* disagreed with the jury's apportionment of plaintiff's negligence, finding it to be unresponsive to the clear weight of the evidence. Yet he indicated that he had no choice but to grant an unconditional new trial, believing himself powerless to reassess plaintiff's freedom from fault and apply a remittitur to the original award. In so holding, he was unaware of the full breadth of a remittitur's applicability in correcting a jury's incorrect determination of a party's liability.

In a recent decision, the Superior Court of New Jersey enunciated quite clearly this court's views concerning the applicability of remittitur and additur in stating that

"It is equally desirable that 'substantial justice' between the parties * * * be obtained by the court in connection with a liability verdict [as well as a damages verdict]. * * * In both situations the techniques [remittitur and additur] present the court with an opportunity to prevent the burdensome 'costs', 'delays' and 'harassments' * * * of a retrial in a case that has clearly 'shocked the court's conscience.' * * * The reexamination by a trial court of the numerous factors inherent in a jury determination of damages is no less speculative than permitting a court to reapportion negligence percentages * * *. If the trial court has the ability to reevaluate the very delicate admeasurement of pain and suffering damages, then clearly that same court is competent to reevaluate a comparative liability determination." *Bishop v. Harski*, 191 N.J.Super. 109, 113, 465 A.2d 577, 579 (1983).

■ This court has on previous occasions stated that "relitigation of issues already correctly decided, in this day of ever-expanding caseloads, serves no useful purpose in furthering the right to trial by jury and certainly is in derogation of principles of sound judicial administration." *Zarrella v. Robinson*, 460 A.2d at 420. In furtherance of this proposition we state that the mechanisms of remittitur and additur shall be available in the future to trial justices not only to reassess an erroneous damage award but also to correct a jury's misapportionment of liability as it may relate to comparative negligence. In both situations the techniques will afford trial justices a means of avoiding unnecessary relitigation of the same issues and will afford litigants just and speedier resolutions in these situations.

In this case if the trial justice had held conclusively that the plaintiff was herself 50 percent negligent and had ordered a remittitur of 50 percent of the jury award, we would have affirmed. However, after a review of the entire record, we are of the opinion that the trial justice did not overlook or misconceive relevant evidence, did not abuse his discretion in awarding the defendant an unconditional new trial, and that he was otherwise not clearly wrong.

For these reasons the plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for a new trial on all issues.

BEVILACQUA, C.J., did not participate.