[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Plaintiffs John Hassinger, Herman Hassinger and Elizabeth Campbell Hassinger ("the Hassingers") own and operate the Wolf Rock Animal Health Center in Exeter, Rhode Island During the construction of the building, they employed the services of Joseph Rowe to paint the interior walls, and to apply a new epoxy floor. Mr. Rowe, with the approval of the Hassingers, applied an epoxy floor product distributed by Sherwin Williams. After three separate epoxy applications, the floor failed in that the finished coat was an undesired green color and within several weeks the epoxy finish bubbled.
Mr. Rowe was defaulted before the trial. The suit against Sherwin Williams was tried before a jury during four days in May, 2004. The jury returned a verdict in favor of the Hassingers on a variety of counts which will be discussed in more depth herein. Several post verdict motions were filed which will be addressed in turn.
I. MOTION FOR JUDGMENT AS A MATTER OF LAW
Sherwin Williams has renewed its motion for judgment as a matter of law. During the course of the trial, Sherwin Williams filed a motion pursuant to Super. R. Civ. P. Rule 50, and as a result thereof, counts 2, 4, and 7 were dismissed. The Court reserved decision with respect to counts 1 and 3. With respect to count 6, it was agreed that the count was not posed against Defendant, Sherwin Williams, and hence was inapplicable.
Count 1 is entitled "Negligent Installation" and because Sherwin Williams did not install the floor, it requests judgment as a matter of law. However, the text of this count discusses negligence in the installation or manufacture of the floor. Accordingly, the Court charged the jury on a negligence count generally. The jury returned a verdict in the Hassingers favor on count 1.
Count 3 is a breach of warranty count. Defendant, Sherwin Williams, requests that the implied warranty of fitness for a particular purpose and the implied warranty of merchantability do not apply as the Hassingers failed to demonstrate that the goods were defective at the time of sale. See Marketing DesignSource, Inc. v. Pranda North America, Inc.,799 A.2d 267, 272 (R.I. 2002) and Oberlander v. GMC,798 A.2d 376 (R.I. 2002). As there was no demonstration that the products were defective at the time of the sale from Sherwin Williams,[1] the Court grants Defendant's motion for judgment as a matter of law with respect to count 3. This negates the jury's verdict in favor of the Hassingers in regard to count 3.
Count 5, as indicated at the close of the Hassingers' case, count 5 claims that Sherwin Williams "vouched for" the work of Mr. Rowe. Clearly, this count could be better phrased. The Court instructed the jury on negligent misrepresentation, without objection, and the jury returned a verdict in favor of the Hassingers accordingly.
Defendant's renewed motion for judgment as a matter of law with respect to counts 1 and 5 is denied.
II. MOTION FOR NEW TRIAL.
The standard which the Court is to apply on a motion for a new trial is both well established and time honored:
 When considering a motion for new trial, the trial justice sits as a super-juror: he or she must weigh and evaluate the evidence, and assess the credibility of the trial witnesses. If, in his or her independent judgment, the evidence is balanced and reasonable minds could differ on the outcome, the trial justice must approve the verdict. If, however, the verdict is not supported by credible evidence, a new trial should be ordered. On appeal we accord great weight to a trial justice's decision on a motion for a new trial and will not disturb it unless it is clearly wrong or otherwise overlooks or misconceives material and relevant evidence. Oliveira v. Jacobson, 846 A.2d 822, 826 (R.I. 2004).
Accordingly, it is appropriate for the Court to review the evidence presented.
This case results out of an alleged failure of Sherwin Williams to properly manufacture and distribute a proper epoxy-based floor product. A floor product allegedly produced by Sherwin Williams was applied by Defendant, Rowe, to the Plaintiffs' property. After three applications the floor bubbled and dried to an odd green-yellow tint.
The first witness was John Hassinger, the contractor for the project. With limited experience in contracting but significant experience in construction, he was familiar with his role. He described how he first met the Defendant, Joseph Rowe. Mr. Rowe, a house painter, first dropped by the project to solicit a painting job for the exterior. The discussion evolved to the proposed epoxy floor. Mr. Rowe was not an employee of Sherwin Williams, nor was it demonstrated that he was more than a painting contractor. Mr. Rowe later introduced Mr. Ducharme of Sherwin Williams to Mr. Hassinger. Mr. Ducharme recommended Rowe to John Hassinger as a qualified applicator for the project, and provided promotional material. (See exhibits 9 and 12.) John Hassinger described the first application which came out with a green hue.[2] Rowe called Mr. Ducharme of Sherwin Williams who explained that the batch was bad or was applied improperly. Sherwin Williams left Mr. Rowe to apply the second coat which resulted in an unacceptable `orange peel' effect. According to John Hassinger "they" (apparently Mr. Rowe and Mr. Ducharme) "agreed" to do the third coat and again Mr. Rowe was left to apply the floor on his own.
John Hassinger explained how Mr. Rowe requested to be left alone in the building. Lengthy delays occurred between coats and bubbles resulted shortly after the third application. The cross-examination of John Hassinger revealed little. There was a quotation to install another floor, which was appreciably higher than the prior work, but the Hassingers favored the Sherwin Williams national reputation. Mr. Rowe's references were never checked. The Hassingers never paid Mr. Rowe $5,000 of the total bill.
Herman Hassinger testified as the owner of the subject property, and as an architect he was the active developer of the property. He invested in this property intending it to be constructed as a veterinary hospital for use by his daughter, a licensed veterinarian. Clearly, he is an able, competent, qualified and experienced architect, though less than cooperative with the Court processes. His testimony gave an overview of the project, explained the purpose of the epoxy-sealed floor, and his desire for a national name, such as Sherwin Williams, to be the producer of the floor product. He verified the lengthy delay in achieving a finished result, described the three failed applications, and the need to open the business. He reviewed the various scientific reports he received, describing why the floor failed.
Mr. Tinkleberg was an expert obtained by the Hassingers. He performed some scientific tests on the floor coating. Though he had only a Bachelor's Degree, he had over 25 years of testing in floor coverings, coatings and paint. He traveled to the Exeter site to sample and test the materials delivered through Sherwin Williams. He was not very critical of the material but he was critical of the process. Mr. Tinkleberg blamed the applicator for not knowing what he was doing, and Sherwin Williams for not applying sufficient technical support, training and instruction necessary. (The material was labeled for "professional use only.") He concluded that the floor had not been adequately prepared, was unsure whether the epoxy used for the later coats would adhere to the earlier ones, and suspected that latex paint had spilled on the floor prior to the first epoxy application. Although there appear to be several explanations why the coatings may have failed, Mr. Tinkleberg appeared credible, particularly because there was never another expert who testified. He was never confronted with any other plausible reason for the failure — at least any reason why Sherwin Williams may not have liability.
So, before reviewing Dr. Elizabeth Hassinger's testimony, (who discussed damages) the jury was left with a tangled mess to determine what went wrong. The defense witness was Peter Ducharme, viewed by Sherwin Williams as an expert but who testified as a mere salesman. Mr. Ducharme was just as vague as the others as to what was represented to the buyers, why this epoxy was used, and why no warnings were issued. Mr. Rowe related the first failure to Mr. Ducharme and Mr. Ducharme informed the manufacturer, but no one took any action to verify the conditions or the technique, or to determine if Mr. Rowe knew what he was doing. After the second failure, a similar result occurred. Instead of Philadelphia Resins or Sherwin Williams sending their own team to apply (or at least supervise and inspect) the application of the third coat, Mr. Rowe was left to try a third time. The only thing Sherwin Williams did was to supply more cans of similar product.
Regardless of whether the Hassingers explained why the floor failed, they did establish clearly and conclusively that the floor failed on three separate occasions. The epoxy was supplied by Sherwin Williams. Regardless of whether Sherwin Williams recommended Rowe for the first application, Sherwin Williams soon recognized that there was a problem on the site. Sherwin Williams provided more epoxy but did nothing else. It provided no supervision and failed to consider Mr. Rowe's methodology.
Accordingly, the jury was correct in finding negligence. Sherwin Williams breached its duty of care to the Hassingers.
The jury was also correct in finding that Sherwin Williams, the seller, had committed negligent misrepresentation. The Hassingers established that Sherwin Williams had provided false misrepresentations (that Mr. Rowe could provide an adequate finished product), the representations were false (a reasonable deduction after three failures), Sherwin Williams should have known the falsity of its statements, and the Hassingers relied on the representations.[3] SeeZarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1257 (R.I. 2003).
Finally, and perhaps most strongly, Sherwin Williams misrepresented its product, its brochure assured customers "Professional hands-on field support for each aspect of your coating application" and "Complete technical backup." Plaintiff's exhibit 20. Simply put, this did not hold true.
In the Court's independent judgment, the evidence is balanced and reasonable minds could logically conclude that Sherwin Williams committed negligence and made one or more negligent misrepresentations.
III. MOTION FOR REMITTITUR
Dr. Hassinger discussed damages and her frustration. The failed floors delayed the entire project. Five weeks later, with a poor floor, she opened anyway. With limited documentation and no supporting testimony, Dr. Hassinger testified:
 1. Had she opened on time, she would have grossed from $7200 to $10,000 more in her initial year. (Her expenses were planned and constant so this resulted in a $10,000 reduction to lost profit).
 2. She incurred $10,000 in expenses, but those were anticipated.
 3. She incurred an estimated $4,500 to conduct special cleanings of the floor.
 4. She received estimates to replace the floor of $14,600.
 5. In order to repair the floor, she needs to remove the x-ray machine, recalibrate it, and store it temporarily at an estimated sum of $6,500 to 7000.
 6. Closing for repairs temporarily would cost bet to incur a decline in gross income of $20,000 but all of her expenses would stay constant and she would still need to pay for ongoing staff and other costs.
Dr. Hassinger totaled these losses to be $82,500, but the court totals them to a maximum of $56,100.
In addition to the above, Dr. Hassinger added that she lost customers as a result of the damaged floor. Dr. Hassinger never provided an amount as to what the value of her lost income was. It is noteworthy that Dr. Hassinger did not consider doing half of the floor at the time, storing her equipment or operating her office out of a temporary on-sight facility, encouraging staff to take vacations during any closing or keeping some of the center open to visit or even to see patients on site. The cost of lost customers was never estimated by Dr. Hassinger or anyone else. The jury was left to speculate.
The verdict in this action was for the sum of $100,000. Clearly, the jury awarded damages which were not established by a substantial weight of the evidence. In fact, apart from Dr. Hassinger's speculative testimony concerning the number of lost customers, which was not explained or provided with a breakdown or calculated. There was no evidence of the number of lost customers, or the resultant lost income. The testimony concerning damages was scant. Accordingly, significant compensatory damages were awarded which were not substantiated by reasonable proof.
This Court, having independently weighed the evidence, finds a reasonable jury could not have reasonably awarded $100,000 in compensatory damages in the instant case, as it is clearly excessive in light of the damages demonstrated by the Hassingers. Dr. Hassinger suffered substantial damages and financial difficulties which were documented. However, the award in question was not sustained by the evidence, which is insufficient to justify the jury award.
Prior to deliberations, the jury was advised concerning the burden of proof, and the computation of compensatory damages. The jury in the instant case, having some discretion in determining the amount of the award, failed to evaluate and assign the appropriate weight to the relevant evidence and clearly, the jury was influenced by passion and prejudice. Accordingly, the jury's failure to heed the Court's instructions on the burden of proof and damages mandates consideration of a new trial on the issue of damages.
This Court, having independently evaluated all the evidence presented finds that no reasonable jury could award compensatory damages in the amount of $100,000.
For all of the foregoing reasons, and in light of the evidence presented as to the Hassingers' damages, a new trial limited to the issue of compensatory damage is granted, unless pursuant to Rhode Island law, the Hassingers file a Remittitur within 10 days from the issuance of this Decision. See Kelaghan v. Roberts, 433 A.2d 226, 229 (R.I. 1981) which states "if the trial justice finds that a new trial is warranted on a question of damages, it is his duty, before ordering a new trial thereon, to give the Plaintiff an opportunity to file a Remittitur or the Defendant an Additur." The Court held in Michalopoulos v. C DRestaurant, Inc. 764 A.2d 121 (R.I. 2001).
 This Court has specifically approved the use of Remittiturs and Additurs "not only to reassess an erroneous damage award but also to correct a jury's misapportionment of liability as it may relate to comparative negligence." Gardiner v. Schobel, 521 A.2d 1011, 1015 (R.I. 1987) (Quoting Cotrona v. Johnson Wales College, 501 A.2d 728, 734 (R.I. 1985)). "The use of these techniques will afford trial justices a means of avoiding unnecessary litigation of the same issues and will afford litigants just and speedier resolution . . ." Id. "Before granting a new trial on damages, a trial justice is required to allow the nonmoving party an opportunity to assent to an Additur." Allen v. Skelding, 634 A.2d 859, 861 (R.I. 1993). . . .
The use of an Additur was also upheld in Dillone v. Anchor GlassContainer Corp. 755 A2d 818 (R.I. 2000) and Hefner v. Distel,813 A.2d 66 (R.I. 2003).
IV. CONCLUSION
The motion of Sherwin Williams for judgment as a matter of law is granted with respect to Count 3 and denied in all other respects. The motion of Sherwin Williams for a new trial is granted on the issue of compensatory damages only, unless Plaintiffs file a Remittitur as set forth herein.
[1] Mr. Tinkleberg, the Hassingers' expert, was far more critical of the application process than the material.
[2] The name of "Philadelphia Resins" was mentioned to the Hassingers as a manufacturer after the first application, but not before.
[3] By the time the second and third application of the floor was to occur, Sherwin Williams was an active participant in the resolution process. According to Hassinger's testimony, Sherwin Williams represented that the floor would be repaired. The Hassingers demonstrated Sherwin Williams' failure to adequately correct the problem. Accordingly, the jury was reasonable in finding for the Hassingers on the negligent misrepresentation count.